**AETNA CASUALTY AND SURETY COMPANY, Appellant,**

v.

**GENERAL DYNAMICS CORPORATION, Appellee.**

**AETNA CASUALTY AND SURETY COMPANY, Appellee,**

v.

**GENERAL DYNAMICS CORPORATION, Appellant.**

**Nos. 91–2252, 91–2254.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 9, 1992.

Decided July 6, 1992.

Rehearing Denied Sept. 2, 1992.

James E. Rocap, Washington, D.C., argued (Niki Kuckes and D. Bradley Clements, Washington, D.C. and Robert T. Haar, St. Louis, Mo., on the brief), for appellant.

James T. Price, Kansas City, Mo., argued (Thomas J. Wilcox and Marilyn P. Dunn, Kansas City, Mo., and Thomas E. Douglass and Bruce D. Ryder, St. Louis, Mo., on the brief), for appellee.

Before WOLLMAN and BEAM, Circuit Judges, and VAN SICKLE,* Senior District Judge.

WOLLMAN, Circuit Judge.

Aetna Casualty and Surety Company appeals, and General Dynamics Corporation cross-appeals, from the district court's [1] declaratory judgment interpreting four comprehensive general liability insurance policies. We affirm in part and reverse and remand in part.

Between May 1, 1975, and July 1, 1978, Aetna issued four consecutive comprehensive general liability insurance policies (CGLs) to General Dynamics. Each of the four policies provides that Aetna will indemnify General Dynamics only for those "sums which the insured shall become legally obligated to pay as damages because of ... bodily injury or property damage." Each policy further provides that Aetna shall have "the right and duty to defend any suit against the insured seeking damages on account of such bodily injury [or] property damage." Each policy also contained the following exclusionary provision:

This insurance does not apply:

... to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

After being served with lawsuits concerning environmental contamination at seven sites and with letters from federal and state environmental protection agencies or from private parties demanding that it clean up environmental wastes at nine other sites (the sixteen sites being located in eight different states), General Dynamics forwarded to Aetna notice of these lawsuits and environmental protection agency

letters and demanded that Aetna provide a defense of the actions and reimburse any sums paid by General Dynamics to resolve the matters. In response, Aetna denied coverage as to two of the sites, but agreed to defend the other lawsuits under a reservation of rights. Aetna later withdrew its defense commitment and filed this action for declaratory judgment in November of 1988.

The district court held that the case was not ripe as to four of the sixteen sites because no suit had been filed nor any settlements achieved at the four sites. As to the remaining twelve sites, the district court applied this court's decision in *Continental Insurance Co. v. Northeastern Pharmaceutical & Chemical Co.*, 842 F.2d 977 (8th Cir.) (*en banc*), cert. denied, 488 U.S. 821, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988) (*NEPACCO*). The district court held that Aetna had no duty to defend or indemnify General Dynamics in connection with suits seeking solely the recovery of environmental response costs because the CGL term "damages," under Missouri law, does not include equitable relief. At six of the twelve sites, however, claims were included for damage to natural resources. As the district court noted, under *NEPACCO* claims for natural resource damages are claims for "damages." *Id.* at 983–84, 987. The district court then determined that the CGL's pollution exclusion did not exempt Aetna from its duty to defend claims for natural resource damages at the six sites. It reasoned that the words "sudden and accidental" mean only "unexpected."

The district court also determined that Aetna's duty to defend General Dynamics against "any suit ... seeking damages" was not triggered by the demand letters issued by the Environmental Protection Agency and its state counterparts in Massachusetts and New Hampshire. Finally, the district court concluded that Aetna was not obligated to pay for defense costs at

* The HONORABLE BRUCE M. VAN SICKLE, United States Senior District Judge for the District of North Dakota, sitting by designation.

1. The Honorable Roy W. Harper, Senior United States District Judge for the Eastern District of Missouri.

four sites on the basis of promises not contained in the CGLs.

## AETNA'S APPEAL

### I.

Aetna contends that the district court improperly interpreted the pollution exclusion clause in the CGLs. As set forth above, this exclusion forecloses coverage for all discharges, dispersals, releases, and escapes of pollutants that are not "sudden and accidental." The district court found the term "sudden" to be ambiguous and concluded that a "sudden" discharge, dispersal, etc., may include events occurring over a long period of time, as long as the resulting damage is "unexpected."

A number of courts have found the pollution exclusion to be unambiguous and have concluded that "sudden" connotes a temporal element and requires that the pollution-causing event be abrupt, not gradual. *See, e.g., Hartford Accident & Indemnity Co. v. United States Fidelity and Guaranty Co.*, 962 F.2d 1484 (10th Cir.1992) (Utah law); *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1157 (4th Cir. 1992) (New Jersey law); *Northern Ins. Co. of N.Y. v. Aardvark Assoc., Inc.*, 942 F.2d 189, 192–94 (3d Cir.1991); *A. Johnson & Co. v. Aetna Cas. & Sur. Co.*, 933 F.2d 66, 72–73 (1st Cir.1991); *Ogden Corp. v. Travelers Indem. Co.*, 924 F.2d 39, 42 (2d Cir. 1991); *Florida Aerospace v. Aetna Cas. & Sur. Co.*, 897 F.2d 214, 219 (6th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 284, 112 L.Ed.2d 238 (1990); *Olin Corp. v. Insurance Co. of N. Am.*, 762 F.Supp. 548, 560 (S.D.N.Y.1991); *Liberty Mut. Ins. Co. v. SCA Serv., Inc.*, 412 Mass. 330, 588 N.E.2d 1346, 1349 (1992).

Some courts have reached a contrary result, holding that "sudden and accidental" means only unexpected or unintended. *See, e.g., CPC Int'l Inc. v. Northbrook Excess and Surplus Ins. Co.*, 962 F.2d 77 (1st Cir.1992) (New Jersey law); *New Castle County v. Hartford Accident and Indemnity Co.*, 933 F.2d 1162 (3rd Cir.1991) (Delaware law).

As stated above, Missouri law requires courts to give the terms of an insurance contract their plain meaning. *NEPACCO*, 842 F.2d at 985. In addition, Missouri law requires that all the terms of an insurance contract be given meaning. *Harnden v. Continental Ins. Co.*, 612 S.W.2d 392, 394 (Mo.Ct.App.1981) (citation omitted). "[T]he courts are practically agreed that the words 'accident' and 'accidental' mean that which happens by chance or fortuitously, without intention or design, and which is unexpected, unusual and unforeseen." *St. Paul Fire & Marine Ins. Co. v. Northern Grain Co.*, 365 F.2d 361, 364 (8th Cir.1966).

The pollution exclusion denies coverage unless the discharge is both sudden *and* accidental. The district court held that the phrase includes unexpected events occurring over an extended period of time. Since "accidental" includes the unexpected, however, the district court's construction gave no effect to the word "sudden." The term "sudden," we believe, "when considered in its plain and easily understood sense, ... is defined with a 'temporal element that joins together conceptually the immediate and the unexpected.'" *The Upjohn Company v. New Hampshire Ins. Co.*, 438 Mich. 197, 476 N.W.2d 392, 397–98 (1991). Indeed, assigning meaning to both "sudden" and "accidental" eliminates any perceived ambiguity. The district court found "sudden" to be ambiguous because it could mean abrupt or unexpected. Because "accidental" includes the unexpected, however, "sudden" must mean abrupt. To hold otherwise would render the word "sudden" superfluous. *See Hartford Accident & Indemnity Co. v. United States Fidelity and Guaranty Co.*, 962 F.2d 1484 (10th Cir.1992) (Utah law) ("We think the 'annexation' of 'sudden' to 'accidental' is precisely the issue: reading 'sudden' without a temporal component renders 'accidental' redundant." 962 F.2d at 1488.). Accordingly, we hold that the district court erred in its interpretation of the pollution exclusion clause and that it should have declared that the clause relieves Aetna of liability for the events described therein.

## II.

■ Aetna also contends that the district court erred by holding that because no suits had yet been filed nor any settlements reached with respect to four of the sixteen sites, Aetna's declaratory judgment action was not ripe for adjudication as to those sites.

Aetna argues that since General Dynamics had made a clear demand for payment of defense and indemnity costs with respect to each of the four sites and because Aetna disputed those demands, there is a live justiciable controversy between the parties sufficient to invoke the jurisdiction of the district court. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). General Dynamics does not address this issue on appeal; apparently it concedes that the district court's decision was in error. We agree with Aetna that a live justiciable controversy exists between the parties and hold that Aetna's suit is ripe with respect to the four sites.

### GENERAL DYNAMICS' CROSS–APPEAL

#### I.

General Dynamics first argues that a recent decision from another circuit collaterally estops Aetna from denying that the term "damages," under Missouri law, includes environmental response costs. In *Independent Petrochemical Corp. v. Aetna ("IPC")*, 944 F.2d 940 (D.C.Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 1777, 118 L.Ed.2d 435 (1992), the District of Columbia Circuit, interpreting Missouri law, held that the term "damages" in an insurance contract includes environmental response costs. General Dynamics now asserts that Aetna is precluded from denying liability in the instant case. We disagree.

■ The doctrine of collateral estoppel bars re-litigation of an issue when: (1) the issue in the prior adjudication was identical; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party in the prior adjudication; and (4) the estopped party had a full and fair opportunity to be heard on the adjudicated issue. *Oldham v. Pritchett*, 599 F.2d 274, 279 (8th Cir.1979). It does not matter that General Dynamics was not a party to the prior suit, as non-parties to the original judgment may raise collateral estoppel offensively against losing parties. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Likewise, General Dynamics may properly raise the collateral estoppel defense for the first time on appeal. Collateral estoppel may be raised at any stage of the proceedings, so long as it is raised at the first reasonable opportunity after the rendering of the decision having the preclusive effect. *See Cotton States Mut. Ins. Co. v. J.O. Anderson*, 749 F.2d 663, 665 (11th Cir.1984) (Collateral estoppel defense not waived when first raised at oral argument); *Lujan v. United States Dept. of the Interior*, 673 F.2d 1165, 1168 (10th Cir.), *cert. denied*, 459 U.S. 969, 103 S.Ct. 297, 74 L.Ed.2d 279 (1982) (collateral estoppel argument not waived when first raised in supplemental appellate brief).

Although General Dynamics has satisfied the *Oldham* standard's technical requirements for collateral estoppel, we conclude that allowing it to assert collateral estoppel offensively would be unfair.

■ The decision to allow offensive collateral estoppel has been left to the broad discretion of the courts, with the recognition that there are situations in which its use would be unfair. *Parklane*, 439 U.S. at 331, 99 S.Ct. at 651; *see also Setter v. A.H. Robins Co.*, 748 F.2d 1328 (8th Cir.1984) (offensive collateral estoppel not applied in face of inconsistent prior judgments). This is such a situation. Recently, we decided the issue of liability for response costs in Aetna's favor, albeit under Arkansas law,[2] in *Grisham v. Commercial Union Insurance Co.*, 951 F.2d 872 (8th Cir.1991). Aetna has prevailed on this issue in other jurisdictions as well. *See, e.g., A. Johnson & Co. v. Aetna Casu-*

---

2. The district court in *Parker Solvents v. Royal Insurance Co., infra,* held that the governing principles of insurance law are the same in Arkansas and Missouri.

*alty & Surety Co.*, 741 F.Supp. 298 (D.Mass.1990), *aff'd*, 933 F.2d 66 (1st Cir. 1991).

We further note that ruling in favor of General Dynamics on this issue would require us to apply a principle of law this court rejected in *NEPACCO, Grisham,* and *Parker–Solvents v. Royal Ins. Co.*, 950 F.2d 571 (8th Cir.1991). Therefore, we hold that Aetna is not estopped from arguing that our decision in *NEPACCO* controls this case.

### II.

General Dynamics next argues that our decision in *NEPACCO* does not apply to this case. Put another way, we must determine whether the interpretation of the term "damages" in these CGLs is controlled by our decision in *NEPACCO.*

General Dynamics asserts that *NEPACCO* does not apply, for three reasons: 1) the term "damages" has a different plain meaning with respect to Aetna's CGL than it did with respect to the insurer's in *NEPACCO,* and extrinsic evidence should be allowed to demonstrate this; 2) the claims for response costs in this case include state law, common law tort, contribution, and natural resource damage claims, as well as the federal causes of action at issue in *NEPACCO;* and 3) two lower state court decisions cast doubt on the *NEPACCO* analysis of Missouri law.

■ In *NEPACCO* we stated: We hold "that the plain meaning of the term 'damages' used in the CGL policies refers to legal damages and does not cover cleanup costs." 842 F.2d at 985. We determined that "the term 'damages' is not ambiguous in the insurance context." *Id.* The policy language in this case is the same as the language at issue in *NEPACCO.* Because *NEPACCO's* holding is not limited in application to a particular insurance contract, nor is the term "damages" ambiguous, extrinsic evidence may not be considered. *Property Tax Research Co. v. Falstaff Brewing Corp.*, 708 F.2d 1333, 1336 (8th Cir.1983) (court could not consider extrinsic evidence to "vary the unambiguous terms of an integrated written document").

Thus, General Dynamics' first contention must be rejected.

■ As to General Dynamics' second argument, the district court held that "[a]lthough the causes of action are based on state statute or common law, rather than CERCLA, the relief sought is still equitable in nature" because the causes of action "seek either reimbursement/restitution or payment of clean-up costs associated with the clean-up of the various sites." We agree. Because these causes of action are "essentially equitable actions for monetary relief in the form of restitution or reimbursement of costs," *NEPACCO*, 842 F.2d at 987, CGL coverage is precluded. To hold otherwise would undermine the rationale adopted in *NEPACCO*, which distinguished between legal and equitable damages. *Id.* The CGL does, however, cover any legal claims asserted against General Dynamics. *Id.*

Third, General Dynamics argues that two post-*NEPACCO* state court decisions demonstrate that this court's prediction of Missouri law has "go[ne] awry." The first, *Hyatt Corp. v. Occidental Fire & Casualty Co.*, 801 S.W.2d 382 (Mo.Ct.App.1990), a personal injury case, held, citing a federal district court case from Michigan and a Wisconsin Supreme Court decision, that attorney fees in connection with a settlement award are "damages" for insurance coverage purposes. *Hyatt* stated that "damages" would be understood by an insured to "provide coverage for all forms of civil liability." *Id.* at 394. The opinion makes no reference to *NEPACCO.* The second decision, *Cooper Indus. v. American Mutual Liability Ins. Co.* (Mo.Cir.Ct.1989), allowed a third-party innocent purchaser of property to recover response costs as damages. After ostensibly rejecting *NEPACCO*'s analysis of Missouri law, the *Cooper* court ruled that the term "damages" does not include a suit by the EPA for equitable relief by way of injunction.

■ Although decisions of a state's intermediate appellate courts are not binding upon us, they are persuasive authority, and we must follow them when they are the

best evidence of what the state's law is. *Garnac Grain Co., Inc. v. Blackley,* 932 F.2d 1563, 1570 (8th Cir.1991). *See* 19 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4507, at 94–95 (1982).

We do not find *Hyatt* and *Cooper* to constitute persuasive evidence that the law of Missouri is, or would be held to be by the Supreme Court of Missouri, different from that as expressed in *NEPACCO.* As indicated above, *Hyatt* did not even refer to *NEPACCO,* and *Cooper,* although certainly critical of *NEPACCO,* reaches a result on its facts not inconsistent with *NEPACCO.* Accordingly, we find no basis upon which to hold that *NEPACCO*'s holding is contrary to Missouri law, either as proclaimed or as clearly predictable.

### III.

 General Dynamics also argues that the district court erred in ruling that the EPA demand letters were not "suits" which triggered Aetna's duty to defend. We cannot agree.

The CGL policies provide that "[Aetna] shall have the right and duty to defend any *suit* against [General Dynamics] *seeking damages* on account of ... property damage" (emphasis added). As indicated above, General Dynamics received demand letters from the EPA and from the states of Massachusetts and New Hampshire stating that General Dynamics was potentially responsible for contamination and should notify the EPA or its state counterpart of its willingness to voluntarily participate in cleanup measures and negotiations. If General Dynamics did not do so, stated the demand letters, the EPA and the states would initiate further appropriate response actions, including possible civil actions against General Dynamics. The district court determined that "suit" means an action in court, not an administrative action, and ruled that the EPA demand letters did not trigger Aetna's duty to defend. General Dynamics counters by arguing that this interpretation is unduly narrow and should include any coercive proceeding in which legal claims or rights are asserted against it.

With respect to the definition of the word "suit," General Dynamics relies on various cases from other jurisdictions that support its interpretation. *See, e.g., Aetna Cas. & Sur. Co., Inc. v. Pintlar Corp.,* 948 F.2d 1507 (9th Cir.1991); *Avondale Indus., Inc. v. Travelers Indem. Co.,* 887 F.2d 1200 (2nd Cir.1989), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990); *A.Y. McDonald Indus. v. Insurance Co. of North America, et al.,* 475 N.W.2d 607 (Iowa 1991) (stating that the majority of courts construe the term "suit" to include any attempt to gain an end by a legal process). *See also* Judge Selya's masterly discussion and analysis of this issue in *Ryan v. Royal Ins. Co. of America,* 916 F.2d 731, ·735–36 (1st Cir.1990) (the term "suit" does not necessarily require that a civil lawsuit be filed before the duty to defend arises).

Other cases have held that demand letters similar to those received by General Dynamics in this case do not constitute the functional equivalent of a suit for damages. *See, e.g., Maryland Cas. Co. v. Armco, Inc.,* 822 F.2d 1348, 1354 (4th Cir. 1987), *cert. denied,* 484 U.S. 1008, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988) (directives from regulatory agency, indicating possibility of CERCLA liability, do not trigger duty to defend); *Arco Indus. Corp. v. Travelers Ins. Co.,* 730 F.Supp. 59, 68 (W.D.Mich. 1989) (Michigan law) ("In plain language, the term [suit] refers to court proceedings."); *Patrons Oxford Mut. Ins. Co. v. Marois,* 573 A.2d 16, 20 (Me.1990) (Maine law) (state environmental agency directive to compel cleanup not a "suit seeking damages.").

We believe that a reading of the CGL language in context militates in favor of Aetna's position. The CGL language imposes upon Aetna a duty to "defend any suit ... seeking damages." Missouri law, in turn, requires us to give the terms of an insurance contract their plain and ordinary

meaning.[3] *NEPACCO*, 842 F.2d at 985. The demand letters in this case did not seek damages; rather, they sought to have General Dynamics participate in, and negotiate, the clean up of the various sites. Although it is a close question, in the light of the requirement of Missouri law that the terms of an insurance contract be given their plain and ordinary meaning, we conclude that the district court did not err in ruling that the demand letters did not constitute suits for damages within the meaning of Missouri law. We add that this court's analysis in *NEPACCO* strongly supports, if not requires, this approach. In so holding, we do not overlook the serious consequences that such demand letters may entail. *See, e.g., Insurance Co. of North America v. Syntex Corp.*, 964 F.2d 829, 830–31 (8th Cir.1992).

## IV.

General Dynamics next argues that the district court erred by failing to enforce certain oral promises. Aetna and the Insurance Company of North America ("INA") orally promised to jointly pay General Dynamics $300,000 for defense costs at one of the sites, Aetna agreeing to pay $75,000 and INA $225,000. In return, General Dynamics agreed to release Aetna and INA from all past and future claims for indemnity and defense costs in connection with the site. INA subsequently paid $300,000 to General Dynamics. The district court determined that since General Dynamics received the entire $300,000 due under the agreement, it suffered no damages based on Aetna's failure to pay the $75,000.

■ General Dynamics argues, however, that INA's payment of an additional $75,000 stemmed from a separate agreement with General Dynamics and was not meant to discharge Aetna from its obligations. Thus, it claims that it is still

entitled to $75,000 from Aetna under the original settlement agreement.[4] We do not agree. In return for payment from Aetna and INA of $300,000 in the aggregate, General Dynamics released both Aetna and INA from all past and future claims. General Dynamics received its $300,000, and Aetna is thus released from all claims by virtue of the agreement.

■ General Dynamics also argues that the district court erred by failing to enforce agreements to investigate and participate in the defense of claims asserted against General Dynamics in various judicial and administrative proceedings. Aetna's agreement to provide coverage was subject to its reservation of rights. The three letters upon which General Dynamics bases this claim use the same language: "we agree to investigate and participate in the defense of this claim under a full reservation of rights to disclaim coverage at a later date." Joint Appendix 272, 276, 278.

General Dynamics contends that although Aetna reserved all of its contractual rights, Aetna is bound to pay all investigation and defense costs up to the time when it decided not to provide coverage for such costs, i.e., when Aetna filed this action. We do not agree. Once Aetna disclaimed coverage, subject to General Dynamics' rights under the CGL, Aetna was not responsible for defense or investigation costs based on these letters.

## CONCLUSION

That portion of the district court judgment which declares that Aetna is not obligated to indemnify or defend General Dynamics with respect to the sites other than the New York City Landfills sites and the New York Review Avenue site is affirmed. That portion of the judgment which declares that the claims and counterclaims relating to the Maxey Flats site, the Tuc-

---

**3.** The district court found, and the parties agree, that Missouri law governs resolution of the coverage issues in this case.

**4.** General Dynamics argues in the alternative that it has been damaged because it did not receive the $300,000 payment until two years

after the date of the agreement. Thus, it argues that it is entitled to statutory interest for this time period. As this argument was not presented to the district court, it is not properly before us. *See Daley v. Webb*, 885 F.2d 486, 488 (8th Cir.1989).

son Airport site, the Quincy Shipyard site, and the Norwich Iron and Metal site are not justiciable is reversed, as is that portion of the judgment which declares that Aetna is obligated to defend General Dynamics in the New York Landfills site and the Review Avenue site cases. The case is remanded to the district court for such further proceedings as are consistent with the views set forth in this opinion.