**BUREAU OF ENGRAVING, INC., Plaintiff–Appellant,**

**v.**

**FEDERAL INSURANCE COMPANY, Defendant–Appellee.**

**Insurance Environmental Litigation Association; Aetna Casualty and Surety Company, Amicus Curiae.**

**No. 92–2910.**

United States Court of Appeals, Eighth Circuit.

Submitted May 10, 1993.

Decided Oct. 1, 1993.

Rehearing Denied Nov. 3, 1993.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

---

Erik Thomas Salveson, Minneapolis, MN, argued (David M. Coyne, on brief), for appellant.

John M. Anderson, Minneapolis, MN, argued (Charles E. Lundberg, on brief), for appellee.

Before BEAM, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

LOKEN, Circuit Judge.

In this diversity action, plaintiff Bureau of Engraving, Inc., ("BE"), appeals the district court's[1] decision that BE's claim for costs incurred in cleaning up two hazardous waste sites is barred by the pollution exclusion in Federal Insurance Company's ("Federal") comprehensive general liability ("CGL") insurance policies. Having concluded after *de novo* review that the district court correctly interpreted and applied Minnesota law, we affirm.

## I.

BE manufactures printed circuit boards through a process that uses chemical etchants. Spent or waste etchants contain metals and are classified as toxic and hazardous wastes. From 1974 to 1978, BE shipped liquid waste etchants to Ecolotech, Inc., based upon Ecolotech's representations that it would recycle the wastes using environmentally safe processes to recover usable

1. The HONORABLE PAUL A. MAGNUSON, United States District Judge for the District of Minnesota.

metals. Instead, Ecolotech stored the wastes of BE and other generators at two Twin City locations until the Minnesota Pollution Control Agency discovered that surrounding soil and groundwater had been contaminated by releases of these hazardous wastes. When Ecolotech defaulted, the Agency demanded that BE and other known generators clean up the mess. BE ultimately spent approximately $500,000 in a successful effort to "remediate" the Ecolotech sites.

During this same period, the United States Environmental Protection Agency proceeded against waste generators to compel the cleanup of several sites in Isanti County, Minnesota. One of the companies sued by EPA brought a third-party action against BE, alleging that BE had contributed hazardous wastes to the Isanti sites. BE eventually settled this claim for $45,000.

Since 1973, BE has been covered by CGL policies in which Federal agreed to indemnify BE for "bodily injury, property damage, or personal injury caused by an occurrence." Prior to 1986, the policies contained a "pollution exclusion" that excluded coverage for releases of contaminants and pollutants unless "such discharge, dispersal, release or escape is sudden and accidental." The policies issued to BE after 1986 contain what is known as an absolute pollution exclusion; BE concedes that it is not entitled to coverage under these policies.

BE filed claims under the pre–1986 CGL policies for its costs in cleaning up the Ecolotech and Isanti sites. When Federal refused to defend or indemnify based upon the pollution exclusion, BE commenced this declaratory judgment action in state court. Federal removed and later moved for summary judgment. Relying on the Minnesota Court of Appeals' decision in *Sylvester Bros. Dev. Co. v. Great Central Ins. Co.*, 480 N.W.2d 368 (Minn.App.1992) ("*Sylvester I* "), the district court held that the releases of hazardous contaminants at the Ecolotech and Isanti sites were not "sudden and accidental" and therefore the pollution exclusion barred BE's claims. *Bureau of Engraving v. Federal Ins. Co.*, 793 F.Supp. 209 (D.Minn.1992).

## II.

■ On appeal, BE argues that *Sylvester I* is inconsistent with the earlier Court of Appeals decision in *Grinnell Mut. Reinsur. Co. v. Wasmuth*, 432 N.W.2d 495 (Minn.App. 1988), and the district court erred in following *Sylvester I*. These decisions of the Minnesota intermediate appellate court are not binding on us, "but they are persuasive authority, and we must follow them when they are the best evidence" of Minnesota law. *Garnac Grain Co. v. Blackley*, 932 F.2d 1563, 1570 (8th Cir.1991). Thus, after *Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991), we must determine de novo (i) whether *Sylvester I* and *Grinnell* are inconsistent; (ii) if so, which one we believe the Supreme Court of Minnesota would follow; and (iii) if not, whether the district court correctly applied *Sylvester I* to the facts of this case.

In *Grinnell*, formaldehyde gas seeped from insulation shortly after a home was remodeled, causing extensive damage. The Court of Appeals held that the loss was covered under the contractor's CGL policy despite a pollution exclusion. Describing the case as "unusual," the *Grinnell* panel unanimously found the claim covered under the doctrine of reasonable expectations because a lay insured would not expect the pollution exclusion to bar coverage for damage caused by the leakage of gas from negligently installed home insulation. The panel additionally ruled, with one judge dissenting, that the "sudden and accidental" exception to the pollution exclusion was ambiguous in this context and therefore the exclusion did not apply. The majority acknowledged that many courts in other States have found this language unambiguous, but only in cases involving a "typical pollution claim," such as the "leaking or disposal of hazardous substances over a lengthy period of time." 432 N.W.2d at 500.

In *Sylvester I*, a different panel of the Court of Appeals dealt with a more typical pollution claim for costs incurred in cleaning up pollutants that had leached from a landfill. The court held that in this context the language of the "sudden and accidental" exception is unambiguous:

"Sudden" in the context of the policies carries the temporal connotation of "abruptness." "Sudden" means the incident at issue occurs relatively quickly rather than gradually over a long period of time.... "Unexpected" is not a reasonable interpretation [of "sudden"] in the context of the policies because "unexpected" is conveyed by the term "accidental." If "sudden" meant "unexpected," "sudden" would become superfluous and repetitious in the policies' use of the phrase "sudden and accidental."

480 N.W.2d at 375–76. The court carefully distinguished *Grinnell:*

> The principal basis for our decision in *Grinnell* was the "reasonable expectations" doctrine.... Rather than support a finding of ambiguity, *Grinnell* supports our conclusion that "sudden and accidental" is unambiguous because this is precisely the type of "typical" pollution case in which *Grinnell* found the scope of the pollution exclusion clause to be unambiguous.

480 N.W.2d at 376. A third panel of the Court of Appeals has recently followed *Sylvester I* and agreed with its basis for distinguishing *Grinnell. See Board of Regents v. Royal Ins. Co. of Am.,* 503 N.W.2d 486, 491–92 (Minn.App.1993), *pet. for rev. granted,* No. C1–93–24 (Minn. Aug. 16, 1993). We conclude that *Sylvester I* rationally distinguished *Grinnell* and therefore the two decisions are not inconsistent.

■ BE argues that the phrase "sudden and accidental" is ambiguous, since it can mean "unexpected and unintended" as well "abrupt and unintended." Because ambiguous language in an insurance contract is construed in favor of coverage, *see Hubred v. Control Data Corp.,* 442 N.W.2d 308, 310 (Minn.1989), BE argues that it is entitled to coverage for the unexpected releases at the Ecolotech and Isanti sites. BE further contends that the policy term "sudden" should be interpreted to mean "unexpected" because: (1) a reasonable layperson would so construe it based upon dictionary definitions and common usage; (2) the term has been so construed for many years in boiler and machinery policies; (3) numerous cases from other jurisdictions have so construed it; and

(4) the insurance industry represented to insurance regulators that the exclusion would not bar coverage except for pollution "expected or intended" by the insured.

However, BE's arguments cannot survive the conclusion in *Sylvester I* that the "sudden and accidental" exception is unambiguous. In our view, *Sylvester I* construed the "sudden and accidental" language consistent with the better-reasoned authorities in other jurisdictions. *See, e.g., Aetna Cas. & Sur. Co. v. General Dynamics Corp.,* 968 F.2d 707, 710 (8th Cir.1992) (reaching the same conclusion under Missouri law). Thus, *Sylvester I* is persuasive authority and the best evidence of Minnesota law, and we must follow that decision.

Under *Sylvester I,* BE is not entitled to coverage under Federal's policies if this is a "typical" pollution case and the releases at the Ecolotech and Isanti sites did not occur abruptly. The district court granted summary judgment for Federal because "the barrels at both the Isanti site and the Ecolotech site had been leaking for almost ten years." 793 F.Supp. at 213. BE does not contest that fact on appeal, but it does argue that summary judgment is inappropriate because there are disputed issues of material fact, namely, whether this is a "typical pollution case"; whether any individual discharges at the sites were abrupt; whether BE knew the waste etchants were contaminants; whether the pollution exclusion bars claims by insureds who did not actively pollute the environment; and whether the reasonable expectations doctrine preempts the pollution exclusion in this case.

A recent Minnesota case confirms the district court's judgment that these are appropriate issues for summary disposition. In *Sylvester Bros. Dev. Co. v. Great Central Ins. Co.,* 503 N.W.2d 793, 795 (Minn.App.1993) ("*Sylvester II*"), the Court of Appeals applied *Sylvester I* and affirmed the grant of summary judgment for the insurer, concluding that the "long-term and ongoing" release of pollutants "cannot reasonably be considered 'sudden'" for purposes of the pollution exclusion. The court expressly rejected the discharge-by-discharge inquiry urged by BE, observing that, "under that theory all releas-

es would be sudden," and "the 'sudden and accidental' exception essentially would swallow the 'rule' of the pollution exclusion." 503 N.W.2d at 797. Having carefully considered the record, and guided by the subsequent teaching of *Sylvester II*, we reject BE's fact-based arguments for the reasons stated by the district court. *See* 793 F.Supp. at 212–14.

The judgment of the district court is affirmed.