**TRICO INDUSTRIES, INC., Plaintiff,**

v.

**TRAVELERS INDEMNITY COMPANY, Insurance Company of North America, Columbia Casualty Company, Defendants.**

No. CV 89–5985 WJR (JRx).

United States District Court, C.D. California.

April 28, 1994.

research has failed to turn up evidence of this flotilla of yacht racing cases.

Reggie C. Giffin, F. Rebecca Sapp, Morrison & Hecker, Kansas City, MO, Kevin K. Fitzgerald, Michael J. Abbott, Jones, Bell, Simpson & Abbott, Los Angeles, CA, for plaintiff.

W. Mark Wood, H. Douglas Galt, Stephen L. Davis, O'Melveny & Myers, Los Angeles, CA, for defendant Ins. Co. of No. America.

Barbara A. Reeves, Michael N. Zachary, Christopher Dale, Morrison & Foerster, Los Angeles, CA, for defendant The Travelers Indem. Co.

## ORDER GRANTING SUMMARY JUDGMENT

REA, District Judge.

This action came before the Court on Defendant Insurance Company of North America's Motion for Summary Judgment. After considering all papers submitted by the parties and the oral argument of counsel, the Court hereby grants defendant's Motion for Summary Judgment.

### I. FACTUAL BACKGROUND

This is an action to determine whether certain policies issued by defendant Insurance Company of North America ("INA") cover payments made by Trico Industries, Inc. ("Trico") in settlement of environmental pollution claims brought by the United States in prior related litigation, *United States v. Conservation Chem.,* 653 F.Supp. 152 (W.D.Mo.1986) [hereinafter *Conservation Chem. III* ].

Beginning in approximately 1965 and continuing until 1976, Trico's predecessor, Columbian Steel Tank Company, contracted with Conservation Chemical Company ("CCC") to remove hazardous solutions from its premises in Kansas City, Missouri, and to dispose of those wastes at CCC's disposal site. This six-acre site is located on the Missouri river floodplain, between East Bottoms Levy and the Missouri River, just upstream of the confluence of the Missouri and Blue Rivers. *United States v. Conservation Chem.,* 619 F.Supp. 162, 182–84 (W.D.Mo. 1985). This hazardous waste was discharged into unlined and improperly lined storage lagoons hollowed into the earth. Once placed in the lagoons, the chemicals began to migrate into the groundwater and continued to do so for several years.

In 1982, the migration of these hazardous substances into the groundwater and ultimately, the Missouri River, prompted the United States government to file a complaint against CCC and several other waste generators for violations of 42 U.S.C. § 6973, Section 7003 of the Resource Conservation and Recovery Act, and 42 U.S.C. §§ 9604, 9606, and 9607(a) of the Comprehensive Environmental Response Compensation and Liability

Act of 1980. *Conservation Chem. III*, 653 F.Supp. at 162. The defendants in the underlying action filed a third party complaint against Trico seeking contribution on the basis that Trico generated a portion of the hazardous waste which had leaked into the groundwater at CCC's disposal site. In 1985, Trico and other *Conservation Chem.* defendants joined in a settlement agreement with the government, whereby Trico agreed to pay $324,308 as its share of the clean up costs. *United States v. Conservation Chem.*, 628 F.Supp. 391, 403 (W.D.Mo.1985).

In the instant action, Trico seeks indemnity from INA for this payment on the theory that liability insurance policies issued by INA cover the damages resulting from the CCC site contamination. These policies contain the following coverage exclusions:

> This insurance does not apply: .... (f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants, or pollutants into or upon land, the atmosphere or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental....*

INA policies GAL–214925 and GAL–338618 (emphasis added). In other words, these policies do not cover any damage arising from pollution unless the occurrence is "sudden and accidental." Unfortunately, the contract does not contain a specific definition of the terms "sudden" and "accidental."

INA contends that it is entitled to judgment as a matter of law because the CCC site contamination was not "sudden and accidental," thereby precluding coverage under the liability policies. In opposition to INA's motion, Trico contends that (i) a transfer of waste to an independent hauler, who later pollutes, does not constitute a "discharge, dispersal, release or escape" as referenced in the exclusion; and (ii) the polluting activities occurred in a "sudden and accidental" manner, thereby falling outside the pollution exclusion. Should either argument succeed, Trico would be allowed to proceed with this indemnification action.

## II. The Summary Judgment Standard

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Summary judgment may only be granted, however, where the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir.1987).

## III. Discussion

### A. Missouri Law

The Court has previously determined that Missouri law governs the insurance contracts at issue in this case. To date, the courts of Missouri have not interpreted the scope of the "sudden and accidental" pollution exclusion, so the Court must rely on Missouri's substantive law of contract construction to determine whether and to what extent the exclusion applies.

Missouri law states that the words of an insurance policy are to be read in their plain and ordinary sense. *Holland Corp. v. Maryland Cas.*, 775 S.W.2d 531, 533 (Mo.Ct. App.1989). With an exclusionary clause, the insurer bears the burden of expressing its intention with clear and unambiguous terms. *Citizens Ins. Co. of New Jersey v. Kansas City Commercial Cartage*, 611 S.W.2d 302, 307 (Mo.Ct.App.1980). An ambiguity exists when the meaning of language is duplicitous, indistinct, or uncertain. *Peters v. Employers Mut. Cas.*, 853 S.W.2d 300, 302 (Mo.1993). If a clause is ambiguous the court must construe it in favor of the insured. *Omaha Indem. v. Pall*, 817 S.W.2d 491, 494 (Mo.Ct. App.1991).

### B. Third Party "Discharges"

Trico claims that there has been no "discharge" under the terms of the INA policies because Trico merely entrusted the hazardous material to CCC. In other words, Trico believes the policies provide coverage because it did not actively "discharge" waste into the environment. The gravamen of this argument is that, for the purposes of the insurance policies, Trico is a passive waste generator, to whom the misfeasance of a supposedly competent disposal company can not be imputed. *See, e.g., Nestle Foods Corp. v. Aetna Cas. & Sur.*, 842 F.Supp. 125, 131 (D.N.J.1993) (holding that transfer of waste to an independent hauler who disposed of the waste at a landfill did not amount to "discharge, dispersal, release or escape" under a policy's pollution exclusion). However, reading such a passive/active distinction into this contract runs counter to established Missouri law, which requires a court to give contract terms their "plain meaning." *Holland*, 775 S.W.2d at 533. The *Nestle* court endowed a pollution exclusion clause with special meaning by injecting limitations not conveyed by the language of the contract, a bit of judicial ingenuity in which this Court will not engage. The Court declines to read a passive/active distinction into language that plainly contains no such terminology.[1]

### C. "Sudden" is Unambiguous

INA asserts that the "sudden and accidental" pollution exclusion bars coverage because the contamination at the CCC site was not "sudden." Trico argues that "sudden" is an ambiguous term that should be construed in favor of the insured to mean "unexpected." *See Omaha Indem.*, 817 S.W.2d at 494. Under such a narrow definition of "sudden," the plaintiff argues that it could not have expected CCC to contaminate the groundwater. Essentially, the question is whether or not "sudden" connotes a temporal element. Because there is a split of authority on point, a brief examination of recent decisions is in order.

In accord with Trico's interpretation of the exclusion, the highest courts of Colorado, West Virginia, Georgia, Illinois, and Wisconsin construe "sudden" narrowly, holding that coverage applies for gradual pollution so long as the discharge was unintended and unexpected. *See Hecla Mining v. New Hampshire Ins.*, 811 P.2d 1083, 1092 (Colo.1991) (holding that "sudden" is susceptible to multiple meanings, is therefore ambiguous, and must be construed against the insurer to mean unexpected and unintended); *Joy Technologies v. Liberty Mut. Ins.*, 187 W.Va. 742, 421 S.E.2d 493, 500 (1992) (holding that insurer is bound by representation to the West Virginia Insurance Commission that the exclusion in question did not alter coverage ... "even if it resulted over a period of time and was gradual, so long as it was not expected or intended."); *Claussen v. Aetna Cas. & Sur.*, 259 Ga. 333, 380 S.E.2d 686, 688 (1989) ("[E]ven in its popular usage, 'sudden' does not usually describe the duration of an event, but rather its unexpectedness...."); *Outboard Marine v. Liberty Mut. Ins.*, 154 Ill.2d 90, 180 Ill.Dec. 691, 705, 607 N.E.2d 1204, 1218 (1992) (holding that "sudden" means unexpected and unintended); *Just v. Land Reclamation, Ltd.*, 155 Wis.2d 737, 157 Wis.2d 507, 456 N.W.2d 570, 578 (1990) (same). State intermediate appellate courts and federal courts interpreting state law have reached a similar result in two other jurisdictions. *Queen City Farms v. Central Nat. Ins.*, 64 Wash.App. 838, 827 P.2d 1024, 1049–1050 (1992); *Harleysville Mut. Ins. Co. v. Sussex County, Delaware*, 831 F.Supp. 1111, 1121 (D.Del.1993) (Delaware law).

On the other hand, the Supreme Courts of Massachusetts, Michigan, Ohio, Florida, New Jersey, and North Carolina have held that the word "sudden," as used in the pollution exclusion, contains an inherent temporal element. *See Lumbermens Mut. Cas. v. Belleville Ind.*, 407 Mass. 675, 555 N.E.2d 568, 572 (1990) ("For the word 'sudden' to have any significant purpose, and not to be surplusage

---

1. Trico mounts a similar argument in support of the proposition that the unforeseen and unsanctioned polluting activities of third parties are "accidental." This proposed rendition of "accidental" does not comport with a plain and ordinary reading of the contract language either; the pollution exclusion contains no clause differentiating between the acts of the insured and the acts of a third party contractor.

when used generally in conjunction with the word 'accidental,' it must have a temporal aspect to its meaning, and not just the sense of something unexpected."); *Upjohn v. New Hampshire Ins.*, 438 Mich. 197, 476 N.W.2d 392, 397 (1991) ("We conclude that when considered in its plain and easily understood sense, 'sudden' is defined with a 'temporal element' that joins together conceptually the immediate and the unexpected.' " (citation omitted)); *Hybud Equip. v. Sphere Drake Ins.*, 64 Ohio St.3d 657, 597 N.E.2d 1096, 1103 (1992) ("The inclusion of the word 'sudden' readily indicates that the exception was not intended to apply to a release that occurred over an extended time."); *see also Dimmitt Chevrolet v. Southeastern Fidelity Ins.*, 636 So.2d 700, 704 (Fla.1993); *Morton Int'l., Inc. v. General Accident Ins. Co. of America*, 134 N.J. 1, 629 A.2d 831, 847 (1993); *Waste Management v. Peerless Ins.*, 315 N.C. 688, 340 S.E.2d 374 (1986). Additionally, at least fifteen other state intermediate appellate courts or federal courts construing state law have adopted a similar interpretation of "sudden and accidental." [2]

As recently as a year ago, some courts considered the split of authority on this issue to be non-persuasive. *See ACL Technologies, Inc. v. Northbrook Property & Cas. Ins.*, 17 Cal.App.4th 1773, 1783, 22 Cal. Rptr.2d 206 (1993). However, the tenor of the most recent decisions outlined above indicates the emerging majority rule to be that "sudden" contains a temporal element.

Although no Missouri state court has ruled on the meaning of the phrase "sudden and accidental," the Eighth Circuit has considered this issue, holding that the word "sudden" contains a temporal element when interpreted according to Missouri law. *Aetna Cas. & Sur. v. General Dynamics*, 968 F.2d 707, 710 (8th Cir.1992) (" '[S]udden' ... when considered in its plain and easily understood sense ... is defined with a 'temporal element that joins together conceptually the immediate and the unexpected.' " (citation omitted)). Recently, another federal court, pondering the identical question under Missouri law, adopted the analysis of the *General Dynamics* Court. *Independent Petrochemical Corp. v. Aetna Cas. & Sur.*, 842 F.Supp. 575, 580 (D.D.C.1994).

 In the absence of a Missouri ruling on point, Trico asserts that the split among state Supreme Courts alone should suffice to establish that "sudden" is ambiguous and open to different interpretations. Trico endeavors to buttress this contention by citing differing dictionary definitions of "sudden." The ostensible goal of this exercise in semantics is to prove that the word "sudden" is intrinsically fraught with ambiguity, and therefore must be construed against the insurance company. In a vacuum, this argument may hold a ring of logic; however, Missouri's law of contract construction militates in favor of the conclusion that "sudden" is unambiguous. In addition to reading words in their plain and ordinary sense, Missouri courts strive to give meaning to all words in the policy. *Harnden v. Continental Ins.*, 612 S.W.2d 392, 394 (Mo.Ct.App. 1981). The word "sudden" immediately precedes the word "accidental," a word that even plaintiff admits is defined largely by the terms unexpected and unintended. If "sud-

---

**2.** *See, e.g., ACL Technologies, Inc. v. Northbrook Property & Cas. Ins.*, 17 Cal.App.4th 1773, 1795, 22 Cal.Rptr.2d 206 (1993); *Barnet of Indiana v. Security Ins. Group*, 425 N.E.2d 201, 203 (Ind.Ct. App.1981); *Farm Bureau Mut. Ins. v. Laudick*, 18 Kan.App.2d 782, 859 P.2d 410, 412 (1993); *City of Maple Lake v. American States Ins.*, 509 N.W.2d 399, 405 (Minn.Ct.App.1993); *County of Fulton v. United States Fidelity & Guar.*, 195 A.D.2d 864, 600 N.Y.S.2d 972, 974 (1993); *O'Brien Energy Sys. v. American Employers' Ins.*, 427 Pa.Super. 456, 629 A.2d 957, 962 (1993); *Greenville County v. Ins. Reserve Fund*, 427 S.E.2d 913, 917 (S.C.Ct.App.1993); *Smith v. Hughes Aircraft*, 10 F.3d 1448, 1452–1453 (9th Cir.1993) (applying California and Arizona law);

*Aetna Cas. & Sur. v. General Dynamics*, 968 F.2d 707, 710 (8th Cir.1992) (Missouri law); *Hartford Accident & Indem. v. United States Fidelity & Guar.*, 962 F.2d 1484, 1489 (10th Cir.1992) (Utah law); *A. Johnson & Co. v. Aetna Cas. & Sur.*, 933 F.2d 66, 72 (1st Cir.1991) (Maine Law); *United States Fidelity & Guar. v. Star Fire Coals, Inc.*, 856 F.2d 31, 34 (6th Cir.1988) (Kentucky law); *Great Lakes Container v. National Union Fire Ins.*, 727 F.2d 30, 33–34 (1st Cir.1984) (New Hampshire law); *Mustang Tractor & Equip. Co. v. Liberty Mut. Ins.*, No. 91–2523, 1993 WESTLAW 566032, at *12 (S.D.Tex. Oct. 8, 1993) (Texas law); *U.S. Fidelity & Guar. v. Murray Ohio Mfg. Co.*, 693 F.Supp. 617, 622 (M.D.Tenn. 1988) (Tennessee law).

den" was construed so narrowly as to limit it to mean unexpected, this word would necessarily be subsumed within "accidental," losing any independent meaning of its own. To do so renders "sudden" superfluous, and such a reading is contrary to Missouri law. On this point, the logic invoked by the *General Dynamics* court is persuasive:

> Indeed, assigning meaning to both "sudden" and "accidental" eliminates any perceived ambiguity. The district court found "sudden" to be ambiguous because it could mean abrupt or unexpected. Because "accidental" includes the unexpected, however, "sudden" must mean abrupt. To hold otherwise would render the word "sudden" superfluous.

*General Dynamics*, 968 F.2d at 710 (citing *Hartford Accident & Indem. v. United States Fidelity & Guar.*, 962 F.2d 1484 (10th Cir. 1992).

The fundamental shortfall of plaintiff's argument is that it requires the Court to interpret "sudden" out of context. There can be no dispute that "sudden" has been ascribed a wide variety of definitions. Nevertheless, this argument is inapposite because "sudden" appears in the contract juxtaposed with "accidental." By virtue of their proximity, these two distinct words define each other. If the Court were to read individual words in a contract at the level of abstraction plaintiff suggests, no contract could be given effect because nearly every word can be considered ambiguous when read by itself and out of context. To avoid this conundrum, the word "sudden" must be read in context with "accidental."

For the reasons noted above, the word "sudden" is unambiguous in the context of the policy exclusion, and includes a temporal element.

Under the temporal definition of "sudden," the decade of continuous pollution at the CCC site was not abrupt, quick, or immediate. Since this pollution did not occur suddenly, plaintiff's settlement payments are not covered under the INA policies and summary judgment in favor of INA, therefore, is proper as a matter of law.[3] Accordingly, the Court grants defendant Insurance Company of North America's Motion for Summary Judgment.

IT IS SO ORDERED.

---

3. Inasmuch as the CCC contamination was not "sudden," the Court need not entertain a lengthy analysis of whether these discharges were also "accidental." Suffice it to say that the intentional and continuous dumping of hazardous wastes onto the exposed earth could hardly be deemed to result in "accidental" contamination.