John Calvin CONNOR, Plaintiff–Appellant,

v.

Carol BRUCE, Defendant–Respondent.

No. 22080.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 19, 1999.

Thomas W. Cline, Gainesville, for Plaintiff–Appellant.

John N. Wiles, West Plains, for Defendant–Respondent.

Before SHRUM, P.J., MONTGOMERY, J., and BARNEY, J.

---

PER CURIAM.

Plaintiff John Calvin Connor (John) sued Defendant Carol Bruce (Carol) after he gave her a deed to his house on Highway 63 in West Plains, Missouri, and after she retained some of his personal property. John tried his case based on a five-count petition. Count I alleged fraud in the inducement of granting the deed to Carol. Count II requested the deed be set aside for undue influence. Count III requested damages for conversion of John's property. Count IV requested the imposition of a resulting trust on the subject real estate, and Count V requested imposition of a constructive trust on said real estate.

After a bench trial, the court found in favor of John on his conversion claim, awarding him a total of $11,000 in damages. As to the remaining claims, the court found in favor of Carol. Both parties appeal.[1]

The trial court entered findings of fact and conclusions of law. The trial court found the following facts:

1. John and Carol entered into a relationship in 1988 and began living together shortly thereafter in the "Highway 63 house". This relationship, although stormy, continued until the Spring of 1994. During periods of separation, Carol continued to reside in property owned by John.

2. On July 23, 1993, John was involved in an explosion and fire resulting in serious and disfiguring burns to his upper body. John was hospitalized from July 23, 1993 through September ____, 1993, at the University of Missouri Hospital Burn Center.

3. During John's hospitalization, Carol visited on weekends and received training as to John's requirements for post release convalescence.

4. John's post release convalescence was at a mobile home, located in close proximity to the salvage yard on real estate owned by John, which had been occupied by Carol prior to the accident.

5. During John's hospitalization Carol received John's Social Security checks, rent payments and other monies which were deposited into Carol's account and which were all accounted for.

6. Carol had a confidential relationship with John arising out of their long standing relationship.

7. During John's post release convalescence, Carol was employed full time, but aided John in his taking of medications, changing bandages, preparation of food and bathing.

8. John was assessed at the University of Missouri Hospital as being at risk of developing "excessive dependency" upon his care givers, and that his care givers might have an undue influence upon him. He was, however, assessed as being cognitively capable of making decisions.

9. John became concerned his property might be taken by his family, and was extremely agitated with his son over the way the salvage yard had been operated during his hospitalization.

10. John resumed operation of the salvage yard approximately November 1, 1993, drove his automobile and conducted business affairs, including the sale of real estate adjoining the "63 house" during this period.

11. After closing the transaction on the sale of the real estate adjoining the "63 house" at the Brill Title Company, John asked if Carol had called about having a deed drawn, and was told, "No". John said he would remind Carol. The deed was requested the next day by a person whom Margaret Keister of Brill Title believed to be Carol.

12. The deed to the "Highway 63 house" was prepared by Brill Title Company and executed on January 17, 1994 by John at the Title Company, and subsequently recorded by the Title Company on January 31, 1994. The deed was retained by the Title Company until April 25, 1994, when it was mailed to Carol. Carol denies knowledge of the execution of the deed until March 1, 1994. Margaret Keister of

---

1. In her appeal No. 22090, Carol fails to brief any error relating to the judgment against her. Accordingly, her appeal must be considered abandoned. *Estate of Huskey v. Monroe,* 674 S.W.2d 205, 208 (Mo.App.1984).

Brill Title recalls that John was alone at the execution of the deed, and that she made inquiry to make sure that John's intent was to place the real estate in Carol's name alone and not to reserve any interest therein.

13. During January, 1994, Carol began residing at the "63 house" although John's residency was only sporadic.

14. At this time, Carol moved to the "63 house", certain of John's antiques and personal belongings were already at the house.

15. On March 10, 1994, John informed Carol of the execution of the deed, John and Carol got into a disagreement where Carol requested John to leave for a cooling off period. Carol was afraid John was going to become physically abusive.

16. John removed many of the items of personal property claimed from the house in October of 1995, and Carol admits the remaining items belong to John, although the parties have been unable to agree upon a method for removal.

17. Carol admits no financial consideration was paid for the execution of the deed.

John's testimony at trial indicated that Carol induced him to act by representing (1) his family was going to institutionalize him and take his property, (2) she would return his property, and (3) she would care for him.

However, Carol's testimony distinctly differed from John's. She testified that (1) she never asked John to deed her the house, (2) John surprised her with the deed, and she had no idea he was going to transfer the property, and (3) she was unaware of the deed until March 10, 1994, when John told her about it.

■ We must affirm the trial court's judgment unless it is unsupported by substantial evidence, unless it is against the weight of the evidence, or unless it misstates or misapplies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is "against the weight of the evidence" with caution and with the firm belief that the

decree or judgment is wrong. In addition, we defer to the trial court's assessment of the credibility of witnesses. Rule 73.01(c)(2). *See In re Snoke*, 913 S.W.2d 407, 409 (Mo. App.1996). We acknowledge that the trial court has leave to believe or disbelieve all, part, or none of the testimony of any witness. *In re Marriage of Scott*, 792 S.W.2d 679, 683 (Mo.App.1990).

■ John's first point complains the trial court erroneously ruled that "fraud must relate to present or pre-existing fact and ordinarily cannot be [predicated] on misrepresentations or statements to be performed in the future even if there is no present intention to perform in the future." John claims this erroneous statement and application of the law caused the court to find in Carol's favor on Count I (fraud) and on Count V (constructive trust).

The trial court's conclusions of law contain the following:

21. Fraud must relate to present or pre-existing fact, and ordinarily cannot be predicted (sic) on misrepresentations or statements to be performed in the future, *Yerington v. Riss*, 374 S.W.2d 52 [Mo. 1964], and this is true even if there is no present intention to perform in the future.

John had contended that Carol induced him to act by representing his family was going to have him institutionalized and she would return his property, and she promised to care for him. These acts would have, by necessity, required action in the future.

Clearly, the court in *Yerington* stated that, as a general rule, "fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on representations or statements which involve mere matters of futurity or things to be done or performed in the future." 374 S.W.2d at 58. Just as clearly, in *White v. Mulvania*, 575 S.W.2d 184 (Mo. banc 1978), the Supreme Court said that two cases expressing the same view as *Yerington* should no longer be followed. *Id.* at 188. The correct statement of law, according to *White*, is that "state of mind, or intent, is itself an 'existing fact,' the misrepresentation of which can constitute fraud."

**628**

*Id. See Sofka v. Thal,* 662 S.W.2d 502, 507 (Mo. banc 1983) (stating that a "promise accompanied by a present intent not to perform is a misrepresentation of present state of mind, itself an existing fact, sufficient to constitute actionable fraud").

Therefore, the trial court misapplied the law by relying on *Yerington.* Point I is well taken.

John's remaining point alleges trial court error in failing to set aside the deed and by ruling that a conspiracy between Carol and Margaret Keister (the maker of the deed) must exist in order to find undue influence. John claims this ruling misapplies the law.

As to setting aside the deed, the trial court's conclusions of law recite the following:

> The Court has previously found against Plaintiff on the issue of fraud. Therefore, the Court concludes the only issues are the confidential relationship or undue influence. It is admitted that Carol and John had a confidential relationship; however, the Court must also find undue influence to set aside the deed. *[Gaugh] v. Webster,* 297 S.W.2d 444 [Mo.1956]. The undue influence must be such over-persuasion or coercion to substitute the will of one person for the free will of the other. *Steller v. Steller,* 401 S.W.2d 473 (Mo.1966).
>
> The deed, although claimed to be prepared at the insistence of Carol, was executed in her absence, almost two months later, in the presence of Margaret Keister of Brill Title, after explanation of its consequences. To find undue influence here would require finding a conspiracy between Carol and Margaret. This the Court cannot do.

 John argues, and we agree, that the "test to determine whether Carol obtained title to John's house by the use of undue influence has nothing to do with any conspiracy between Carol and Margaret." As stated in *Pike v. Pike,* 609 S.W.2d 397, 402 (Mo. banc 1980), the "test is whether the grantor's free agency and voluntary action were thwarted." Therefore, the existence of undue influence in this case does not require a finding of conspiracy. Because of this misap-

plication of the law, Point II is also well taken.

In a court-tried case, we must reverse if the trial court's judgment is based on an erroneous application of the law. *State ex rel. State Highway Comm'n v. Morganstein,* 649 S.W.2d 485, 491 (Mo.App.1983). In this case, the trial court made no findings regarding the witness's credibility. Therefore, the judgment was entered based solely on an erroneous application of the law. For that reason, a new trial is necessary.

The judgment of the trial court is reversed and the cause remanded for a new trial in accordance with the law as expressed in this opinion.