RALSTON PURINA COMPANY,
et al., Appellants,

v.

Ronald A. LEGGETT, Collector of
Revenue, City of St. Louis,
Missouri, Respondent.

No. ED 76702.

Missouri Court of Appeals,
Eastern District,
Division One.

May 30, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 5, 2000.

Application for Transfer Denied
Aug. 29, 2000.

Bryan Cave LLP, Thomas C. Walsh, John P. Barrie, Mark B. Leadlove, St. Louis, for appellants.

Patricia A. Hageman, James J. Wilson, Patricia L. Wendling, St. Louis, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellants, Ralston Purina Company,[1] Eveready Battery Company,[2] Protein Technologies International,[3] and approximately 70 executive and key employees of these corporations, ("appellants"), appeal[4] the judgment of the Circuit Court of the City of St. Louis, holding that non-qualified stock options granted to employees as part of their compensation, are subject to the City of St. Louis' earnings tax. We affirm.

In 1997, the 70 employee-appellants, executives, and key employees of Ralston,[5] exercised non-qualified stock options ("stock options")[6] previously granted to them under the 1988 Ralston Incentive Stock Plan. All of the individual appellants were employed in the City of St. Louis at all relevant times.

■ Generally, a non-qualified stock option consists of three significant events: 1) the granting of the stock option by the employer; 2) the vesting of the right to exercise the stock option; and 3) the exercising of the stock option by the employee. A non-qualified stock option is a right granted to an employee in exchange for

1. A for-profit Missouri corporation with its corporate headquarters located in the City of St. Louis, Missouri.

2. A for-profit Delaware corporation with its corporate headquarters located in the City of St. Louis, Missouri and a wholly-owned subsidiary of Ralston Purina Company.

3. A for-profit Delaware corporation with its corporate headquarters located in the City of St. Louis, Missouri and a wholly-owned sub-

sidiary of Ralston Purina Company until its sale to E.I. Dupont de Nemours in December 1997.

4. The three appeals filed by appellants were consolidated.

5. "Ralston" refers to all three corporations.

6. Non-qualified stock options are options that do not qualify under sections 421, 422 or 423 of the Internal Revenue Code.

services. The stock options granted to individual appellants, gave them the right to purchase a certain number of shares of Ralston's common stock at the grant price, which is equal to the fair market value of the common stock at the time of the granting of the stock options. No money is paid for the stock options and there is no capital outlay for the option. According to the Ralston plan, the purpose of granting stock options is to attract, retain, and motivate officers and other key employees who make important contributions to the success of the company.

Non-qualified stock options are earned from the time of grant and on a continuing basis as long as the employee remains employed with Ralston. Only current employees are eligible to receive a stock option grant, and they must remain employed for a substantial period of time in order for the options to vest. Some of the options vest based on the passage of time alone, and some of the options have performance measures associated with the vesting schedule. The stock options that are granted pursuant to the program may not be sold or encumbered. Under the plan, if an employee voluntarily terminates employment prior to vesting, the employee forfeits his or her option. If an employee, whose option has vested, voluntarily terminates employment, the employee will either forfeit the right to exercise the options or have a shortened period of time in which to exercise the options.

The stock options are not subject to the respective federal or Missouri state income tax when granted. However, each individual appellant receives ordinary income for federal and Missouri state income tax purposes, at the time the stock option is exercised, in an amount equal to the excess of the fair market value, at the date of the exercise over the grant price of common stock acquired ("option income"). The total option income from the 1997 stock option exercise totaled approximately $27.5 million, with individual option income ranging from approximately $3,500 to $6.1 million.

Prior to 1997, Ralston withheld and paid without protest Earnings Taxes to the City of St. Louis. However, on the 1997–option exercise income, Ralston paid the City taxes under protest. The option income amounts were deducted as expenses of compensation for Ralston for 1997, for purposes of federal and state income taxation, as well as for City earnings tax purposes. Within 90 days thereafter, appellants timely filed suit against City Collector, naming him as the defendant herein, pursuant to section 139.031, RSMo 1994.[7]

The case went to trial on July 21, 1998. On May 13, 1999, the trial court filed its Findings of Fact, Conclusions of Law, and Judgment. The trial court entered judgment for the City Collector, holding that non-qualified stock options granted to employees as part of their compensation packages, are subject to the City of St. Louis' earnings tax. The trial court also held that the Collector's method of valuing such income, as measured by the difference between the market price of the stock at the time of exercise, and the market price of the stock at the time the options are granted, is a permissible means of measuring such income.

Appellants appealed to the Supreme Court in each of the three consolidated cases. The appeals were transferred to this court by the Supreme Court.

On their sole point on appeal, appellants argue the trial court erred in ruling that appellants were liable for earnings tax based on the "spread" between the market price of the stock at the time of exercise, and the market price of the stock at the time the options are granted. Appellants argue that the spread is not earned income because it represents a gain in the stock price attributable to numerous market factors and does not constitute wages, commissions, and other compensation earned by appellants for work done or services

---

7. All statutory references are to RSMo 1994, unless otherwise indicated.

performed or rendered in the City. We disagree.

In reviewing a court-tried case, appellate courts will sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). "We accept the evidence and inferences favorable to the prevailing party and disregard all contrary evidence." *Lake Cable, Inc. v. Trittler*, 914 S.W.2d 431, 434 (Mo. App. E.D.1996). While we defer to the trial court for findings of fact, we independently evaluate the court's conclusions of law. *Id.* We will reverse the trial court's judgment if it is based on an erroneous application of the law. *Connor v. Bruce*, 983 S.W.2d 625, 628 (Mo.App. S.D.1999).

Section 92.110 authorizes the City of St. Louis:

> to levy and collect, by ordinance, for general revenue purposes, an earnings tax on the salaries, wages, commissions and other compensation earned by its residents; on the salaries, wages, commissions and other compensation earned by nonresidents of the city for work done or services performed or rendered in the city.

Pursuant to the enabling statute, the City of St. Louis enacted section 5.22, which levies an earning tax on "salaries, wages, commissions, and other compensation" by City residents and by nonresidents of the City, for work done or services rendered in the City. Revised Code of the City of St. Louis (1994). Section 5.23 levies the companion payroll expense tax. *Id.*

■ Income subject to the earning tax is limited by both the enabling statute and the ordinance to income received as compensation for services, including salaries, wages, commissions and other compensation earned. "Earnings" is defined as "gains of the person derived from his services or labor without the aid of capital." *Adams v. City of St. Louis*, 563 S.W.2d 771, 775 (Mo.banc 1978). Earnings from work and services do not include income such as "interest on investments, rents, dividends, capital gains and like." *Id.* at 773.

Appellants concede that stock options are compensation for services rendered by the employees. However, appellants argue that the issue presented in this case is: "what is the *nature* of the compensation that is earned in the grant of the stock option and *when* is it 'earned'?" In other words, are the stock options earned and if so, when? Appellants further argue that even if this court holds that the stock options are earned income, then, they are earned at the time of grant and not at the time of exercise.

In *Hopkins v. City of Kansas City*, 894 S.W.2d 156 (Mo.banc 1995), the Supreme Court held that deferred compensation was "earned" within the meaning of the statute authorizing city to tax compensation earned for services. The Court stated that for earning tax purposes, "earning" compensation is not equated with receiving compensation, rather, "earnings is defined by an array of qualities that reveal the employee's control over the compensation." *Id.* at 158. The Court further stated that "in *Adams*, the special unemployment benefits were not subject to earnings tax because the benefits were 'wholly beyond the employee's control.'" *Id.* at 158–59. The Court concluded that the city might tax compensation when an employee controls it because compensation is earned when the employee gains control of it, though it may not be in hand. *Id.* at 159. Therefore, the Court ruled that the employees controlled their compensation when they "caused" it to be directed into deferred compensation plans and are subject to the city earned income tax. *Id.*

■ In the case at bar, we conclude that the stock options granted to employees as part of their compensation for services rendered are earned compensation. The employees do not purchase the options.

The stock options are only granted to employees of Ralston. Employees earn the stock options from the time of grant and on a continuing basis as the employees retain employment. They must remain employed for a substantial period of time in order for the option to vest. Some options vest based on passage of time alone, and some of the options have performance measures associated with the vesting schedule. Under the plan, if an employee voluntarily terminates employment prior to vesting, the employee forfeits his or her option. If an employee whose option has vested voluntarily terminates employment, the employee will either forfeit the right to exercise the options or have a shortened period of time in which to exercise the options. All of these demonstrate the control that employees have over earning stock options. Unlike in *Adams*, where the special unemployment benefits were not subject to earnings tax because the benefits were 'wholly beyond the employee's control,' in our case, the stock options are not wholly beyond the employee's control. Thus, these qualities that reveal the employee's control over the compensation indicate that the compensation is earned.

■ Furthermore, with regard to when the City could tax the option income, we conclude that the method chosen by the City to tax the income at the time of exercise is appropriate. Prior to exercise, employee's full control over stock options is not readily ascertainable because of the contingencies involved. On the other hand, after exercise employee's full control becomes readily ascertainable. Thus, like in *Hopkins*, the City of St. Louis can tax the employee at the time of exercise because that is when the employee gains control of the benefits. Moreover, while stock options at the time of grant are valuable, their value is not readily ascertainable at the time of grant but become ascertainable at the time of exercise. Therefore, the City of St. Louis can tax stock option income at the time of exercise.

Appellants repeatedly argue that the "spread" or option income does not result from work done by the employee, but rather, it is a gain produced by the workings of the stock market. Therefore, appellants argue the spread or option income is not earned income. Appellants' argument is unpersuasive. The non-qualified stock options are only granted to employees of Ralston. Employees granted Ralston's stock options receive the financial benefit of the spread or option income, not because employees have invested in Ralston's common stock, but because employees were granted the opportunity to purchase Ralston's stock at a lower price than market price, due entirely to their status as participants in Ralston's non-qualified stock option program. These employees take none of the risks an investor takes. This opportunity is not offered to the general public. Additionally, the trial court concluded:

The key question is not how the economic benefit (the spread) was actually produced but why a particular individual received that benefit. The answer is that the employee receives the benefit of being able to financially gain as a result of the spread because he or she is an employee of Eveready, Ralston or Protein Technologies and his or her participation in the non-qualified stock option program is part of the compensation he or she receives in return for services provided as an employee.

Exercising the option to purchase stock at a lower than market price results in money coming into the employee's pocket as a result of his or her work for the employer and the money is the employee's to keep. This is compensation.

Our decision is consistent with other jurisdictions that have considered this issue. *See e.g., Marchlen v. Township of Mt. Lebanon,* 560 Pa. 453, 746 A.2d 566 (2000) (stock options constitute compensation to employees that may be taxed as earned income and because stock options

have no readily ascertainable value at the time of grant, taxing stock options at the time of exercise is appropriate).

The judgment of the trial court is affirmed.

JAMES A. PUDLOWSKI, J., and JAMES R. DOWD, J., concur.