**TRANS WORLD AIRLINES, INC.,**
**Appellant/Cross–Appellant,**

v.

**ASSOCIATED AVIATION UNDER-**
**WRITERS, et al., Respon-**
**dents/Cross–Appellants.**

**No. ED 76846.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 14, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 2001.

Application for Transfer Denied Nov. 20, 2001.

Sherri Cranmore Strand, Paule, Camazine & Blumenthal, P.C., Clayton, MO, John W. Fried, Lee M. Epstein, Fried & Epstein, LLP, Philadelphia, PA, Alan Charles Kohn, Kohn, Shands, Elber, Gianoulakis & Giljum, St. Louis, MO, Attorneys for Appellant/Cross–Respondent.

Jeffrey L. Cramer, Brown and James, St. Louis, MO, James M. Yeretsky, Yeretsky & Maher, L.L.C., Overland Park, KS, Joe B. Whistler, Cooling & Herbers, PC., Kansas City, MO, Brian A. Frankl, Cohn & Baughman, Chicago, IL, Julius A. Rousseau, London Fischer, LLP, New York, NY, Gary Westerberg, Lord, Bissell & Brook, Chicago, IL, Attorneys for Respondents/Cross–Appellants.

Alan K. Goldstein, Goldstein & Price, St. Louis, MO, Laura A. Foggan, Daniel E. Troy, Michelle E. Boardman, Wiley, Rein & Fielding, Washington, DC, Attorney for Amicus Curiae.

GARY M. GAERTNER, SR., Presiding Judge.

Appellant, Trans World Airlines, Inc. ("TWA"), appeals from two judgments of the Circuit Court of the City of St. Louis regarding its claims for insurance coverage. TWA brought an action against various insurance companies, seeking a declaration of insurance coverage and other relief under insurance policies sold by respondents to TWA from 1956 to 1991. Specifically, TWA sought declarations with respect to the duties of its insurance companies to defend and indemnify it for the costs it incurred in connection with certain enforcement actions commenced by environmental agencies. Further TWA sought damages for the insurance companies' breach of policies and vexatious refusals to pay and other relief. In the first judgment being appealed from, the trial court granted partial summary judgment in favor of respondents, post 1969 insurers,[1] denying TWA's claim for insurance coverage. In the second judgment, after a bench trial, the trial court entered a judgment in favor of respondents, pre–1970 insurers,[2] denying TWA's claim for insurance coverage. Respondents/cross-appellants[3]

---

1. The post–1969 insurers include those insurance companies that TWA purchased insurance policies from after 1969. After 1969, TWA purchased insurance on a vertical, quota-share basis, with a number of insurers undertaking a specific percentage of TWA's insured risk for each policy period. For these policies, Associated Aviation Underwriters ("AAU") acted as the lead underwriter and performed certain claims handling functions.

2. The pre–1970 insurers refer to those insurance companies that TWA purchased insurance policies from prior to 1970. From 1956 until 1970, TWA purchased primary Comprehensive General Liability insurance policies from AAU and its member companies. During that period, TWA also purchased several layers of excess insurance from Certain Underwriters at Lloyd's London and London Market Insurance Companies and others, including Insurance Company of North America, Inc. and American Home Assurance Company.

3. Respondents include the following:
 ● Associated Aviation Underwriters Group and its subscribing companies. Group A includes: Albany Insurance Group, Alliance Assurance Company, Limited (U.S.Branch), Allianz Insurance Company, The American Insurance Company, American Motorists Insurance Company, Buffalo Insurance Company, Centennial Insurance Company, Federal Insurance Company, Fireman's Fund Insurance Company, General Accident Fire & Life Assurance Corp., Ltd. (U.S.Branch), General Insurance Company of America, Insurance Company of North America, The London Assurance (U.S.Branch), The London & Lancashire Insurance Co. Ltd., The Marine Insurance Company Limited, Merchants Fire Assurance Corporation of New York, National Fire Insurance Company of Hartford, Northern Insurance Company of New York, Pacific Indemnity Company, SAFECO Insurance Company of America, The Sea Insurance Company Limited (U.S.Branch), Sun Insurance Office of America Inc., and Vigilant Insurance Company. Group B includes: The American Insurance Company, Commercial Insurance Company of Newark, New Jersey, Commercial Union (Assurance Company, Ltd.) Insurance Company of New York, The Continental Insurance Company, The Fidelity and Casualty Com-

pany of New York, Fidelity–Phoenix (Fire) Insurance Company (of New York), Firemen's Insurance Company of Newark, New Jersey, Glens Falls Insurance Company, The Hanover (Fire) Insurance Company, The Metropolitan Casualty Insurance Company of New York, Niagara Fire Insurance Company, The Ocean Accident and Guarantee Corporation, Limited and Phoenix Assurance Company of New York.

- United States Aviation Insurance Group and its subscribing companies, including: The Aetna Casualty & Surety Company, Continental Casualty Company, Employers Insurance of Wausau, Hartford Fire Insurance Company, Liberty Mutual Insurance Company, Maryland Casualty Company, Reliance Insurance Company, Royal Indemnity Company, St. Paul Fire & Marine Insurance Company, State Farm Fire and Casualty Company, The Travelers Insurance Company, and Zurich Insurance Company.
- Somerset Marine, Inc. (formerly known as New York Marine Managers, Inc.), and its member companies, which includes: Employers Mutual Casualty Company, Navigators Insurance Company, Christiana General Insurance Corporation of New York, Colonia Insurance Company, Farmers Mutual Hail Insurance Company of Iowa, Harleysville Mutual Insurance Company, National Liability & Fire Insurance Company, Pennsylvania Lumbermans Mutual Insurance Company, and Worcester Insurance Company.
- Somerset Aviation, Inc. (formerly known as Aviators International Insurance Group, Inc.), and its member companies, which include: Progressive Casualty Insurance Company, Christiana General Insurance Company, The Reinsurance Corporation of New York, and Farmers Mutual Hail Insurance Company of Iowa.
- American Home Assurance Company, and its managing general agent, AIG Aviation, Inc.
- Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America.
- United States Fire Insurance Company.
- Compagnie D'Assurances Maritimes Aeriennes & Terrestres.
- Certain Underwriters at Lloyd's, London, and Certain London Market Insurance Companies, including: AA Mutual International Insurance Co. Ltd., Agrippina Versicherungs Aktiengesellschaft, Alba General Insurance Company Ltd., Albion Insurance Company Ltd., Alliance Assurance Company Ltd., Allianz International Insurance Company Ltd., Anglo Saxon Insurance Association Ltd., Assicurazioni Generali de Trieste e Venezia S.P.A., Assurances Generales de France, Aviabel Insurance Company, Aviation & General Insurance Company Ltd., Bishopsgate Insurance Company Ltd., British Aviation Insurance Company Ltd., British Law Insurance Company Ltd., British Merchants Insurance Company Ltd., British Reserve Insurance Company Ltd., British Traders Insurance Company Ltd., Brittany Insurance Company Ltd., Commercial Union Assurance Company PLC, Compagnie D'Assurances Maritimes Aeriennes et Terrestres, La Concorder Compagnie D'Assurance, S.A., Cornhill Insurance PLC, Crusader Insurance Company Ltd., Dowa Fire & Marine Insurance Company, Drake Insurance Company Ltd., Eagle Star Insurance Company Ltd., Economic Insurance Company Ltd., Edinburgh Assurance Company, Elders Insurance Company Ltd., Excess Insurance Company Ltd., Federal Insurance Company Ltd., Fidelidade Insurance Company Ltd., Fuji Fire & Marine Insurance Company, Gan Y Incendie Accidents et Risques Diverse, General Accident Insurance Company Ltd., Guardian Royal Exchange Assurance PLC, Hannover Ruckversicherungs A.G., Hansa Marine Insurance Company (UK) Ltd., Helvetia Accident Swiss Insurance Company Ltd., Highlands Insurance Company Ltd., Insurance Corporation of Ireland PLC, Insurance Corporation of North America (UK) Ltd., Iron Trades Mutual Insurance Company Ltd., La Belgique Societe Anonyme Compagnie D'Assurances, Lombard Elizabethan Insurance PLC, Lombard Insurance Company Ltd., London & Edinburgh General Insurance Company Ltd., London & Hull Maritime Insurance Company Ltd., Minster Insurance Company Ltd., Motor Union Insurance Company Ltd., Mutual Marine Office Inc., National Casualty Insurance Company, Nordiska Poolen, NRG Fenchurch Insurance Company Ltd., NRG London Reinsurance Company Ltd., NRG Victory Reinsurance Ltd., National & General Insurance Company (UK) Ltd., National Casualty Company, Nationwide General Insurance Company Ltd., N.E.N. (de Nieuwe Ereste Nederlandsche NV), New York Marine Managers, New Zealand Insurance Company (UK) Ltd., Nippon Fire & Marine Insurance Company (UK) Ltd., Nippon In-

cross-appeal from the trial court's grant of partial summary judgment in favor of TWA declaring that environmental response costs might constitute damages for purposes of respondents' policies.[4] We affirm the judgments denying coverage and dismiss the cross-appeals as moot.

## I. FACTS

TWA's claims for insurance coverage arose out of the operation of its facility in Kansas City, Missouri, known as the Ground Operations Center or the Mid Continental International Facility ("MCI"). MCI is leased by TWA and used as a maintenance and repair center for its aircraft. The City of Kansas City owns MCI and TWA operates the site pursuant to a lease in 1954.

MCI is comprised of aircraft maintenance facilities. The first facility was constructed and became operational in 1956. Initially, MCI consisted of Building 1, a large building housing administrative offices, aircraft hangers and several support shops for aircraft frames; the first phase of Building 2, which contained operations related to piston engine overhaul and testing; the original Wastewater Treatment Plant; and the old Fuel Farm. The MCI facility incorporated a wastewater treatment plant and associated basins for holding wastewater and waste oil. This wastewater treatment plant, with its associated sludge drying beds, was located in the northeastern portion of the site, adjacent to Todd Creek.

In 1971, MCI was expanded, with the construction of the Superhangar for widebody jets, the expansion of Building 2, and the modification of the Wastewater Treatment Plant. In 1975, MCI was again expanded with the construction of the South SPCC pond and the Cooper Road SPCC pond. Also, an additional chemical wastewater treatment plant for plating shop wastes was constructed. As a result of the construction in the 1970s, the sludge drying beds were excavated, and the detritus was transferred to the western edge of the facility. When the Superhangar was constructed, the sludge was again transferred and mainly dumped at a location at the east end of a Kansas City International airport runway.

---

surance Company of Europe Ltd., Norwich Union Fire Insurance Society Ltd., Norwich Union Insurance Company Ltd., Oriental Fire & General Insurance Company, Pearl Insurance Company Ltd., Phoenix Assurance PLC, Polygon Insurance Company (UK) Ltd., Progressive Casualty Insurance Company Ltd., Provincial Insurance PLC, Prudential Insurance Company Ltd., La Runion Francaise D'Assurances et Des Reassurances S.A., Riunione Adriatica di Sicurta SPA, River Thames Insurance Company Ltd., Road Transport and General Insurance Company Ltd., Royal Scottish Insurance Company Ltd., Skandia International Insurance Corp., Skandia Insurance Company (UK) PLC, Somerset Marine, Inc., Sphere Drake Insurance PLC, Sphere Insurance Company Ltd., Storebrand Insurance Company (UK) Ltd ., Stronghold Insurance Company Ltd., Sumitomo Marine & Fire Insurance Company Ltd., Swiss Union Insurance Company, Switzerland Insurance Company (UK) Ltd., Taisho Marine & Fire Insurance Company Ltd., Terra Nova Insurance Company Ltd., Threadneedle Insurance Company Ltd., Tokio Marine & Fire Insurance Company Ltd., Trent Insurance Company Ltd., Turegum Insurance Company, Ulster Marine Insurance Company Ltd., L'Union Proprietares Belges, United Scottish Insurance Company Ltd., UPB Societe Anonyme D'Assurances Incendie Vie et Accidents, Vesta Insurance Company (UK) Ltd., Victoria Insurance Company Ltd., World Marine & General Insurance Company Ltd ., Wurttemburgisch Feuerversichrung AG, and Yorkshire Insurance Company Ltd.
● La Reunion Aerienne and La Concorde.

4. The Insurance Environmental Litigation Association filed a brief of *Amicus Curiae* to this Court in support of respondents.

According to TWA, the MCI Claims arose from a proceeding brought by the U.S. Environmental Protection Agency (EPA) under the Resource Conservation Recovery Act of 1976, 42 U.S.C. Section 6928 ("RCRA"), in 1988. RCRA was enacted in 1976 and became effective in 1980. TWA was aware of the implications of RCRA to its operation at MCI. TWA was expected to terminate its hazardous waste operations or apply for a permit under RCRA at that time. TWA notified the EPA of its operations, but ignored the effects of the statute.

On June 25 and 26, 1985, the EPA and the Missouri Department of Natural Resources ("MDNR") conducted a joint inspection at the MCI site. As a result of this joint investigation, the MDNR served TWA with an Order to Abate Violations, dated August 26, 1985. In February 1986, the EPA undertook a further investigation into TWA's waste management practices at the MCI site. On June 2, 1988, the EPA filed a complaint, compliance order, and notice of opportunity for hearing, ordering TWA to pay a penalty of $100,000; to develop and ultimately implement closure and post-closure plans for the ravine area; to discuss groundwater monitoring deficiencies and further action; and to develop a groundwater monitoring plan for the ravine area in accordance with the applicable federal and state environmental regulations. TWA and the EPA entered into a consent agreement and on September 29, 1989, an Administrative Order on Consent was issued. The 1989 Order provides for study, planning, and implementation of corrective measures, and includes stipulated penalties against TWA for any failure to abide by the terms of the Order. TWA alleges that it has spent more than $20 million to comply with the terms of the 1989 Order.

## II. PROCEDURAL HISTORY

TWA initially filed its claim in 1994. On June 1, 1995, TWA filed its First Amended Petition for declaratory judgment, damages, and other relief. On July 22, 1997, TWA filed its Second Amended Petition seeking a declaration of coverage under insurance policies issued by the various respondent insurers between 1956 and 1991. TWA stated three causes of action. Count I was for declaratory relief for defense, Count II for declaratory relief of indemnity and Count III for breach of contract.

On August 11, 1997, respondents filed a motion for partial summary judgment asking the trial court to declare that the phrase "sudden and accidental" contained in the pollution exclusion of certain airline operators' liability policies bound in favor of TWA is unambiguous. They also contended that the phrase does not violate public policy, and should be enforced as written, thereby limiting any pollution coverage to only those instances where the discharge was both sudden, meaning abrupt, and accidental, meaning unexpected and unintended. On September 9, 1997, TWA cross-motioned for partial summary judgment asking the trial court to declare that respondents' pollution exclusion cannot and should not be interpreted to bar coverage for gradual, unintentional pollution damage. On October 29, 1997, the trial court [5] entered an order of partial summary judgment declaring that those policies that provide coverage for pollution only where the pollution is sudden and accidental do not provide coverage when the pollution is gradual. On November 18, 1997, TWA filed a motion for reconsideration of the trial court's order declaring the meaning of the pollution exclusion. On

5. Honorable Julian L. Bush presiding.

December 22, 1997, the trial court[6] overruled TWA's motion.

On July 1, 1998, TWA filed a motion for partial summary judgment requesting the trial court to declare that AAU breached its duty to defend TWA and order it to pay TWA all costs it incurred in defending and settling the MCI claims. TWA also filed a motion for partial summary judgment on all affirmative defenses through which respondents contend that environmental response costs are not insured "damages". On July 1, 1998, respondents filed a motion for summary judgment based upon the owned property exclusion. In their motion, respondents contended they are entitled to summary judgment on all counts of the second amended petition because all of the insurance contracts at issue exclude coverage for property damage to property rented to, occupied by, used by, or in the care, custody or control of TWA. On July 1, 1998, respondents also filed a motion for partial summary judgment based on the pollution exclusions. Respondents requested the trial court to enter summary judgment in their favor and declare that the policies in effect from January 1, 1970 until October 1, 1991 do not provide a defense or indemnity for the claims at issue in this litigation.

Furthermore, on July 1, 1998, TWA filed a motion for partial summary judgment asking the trial court to declare that each and every one of its insurance policies is triggered. On the same day, respondents also filed a motion for partial summary judgment asking the trial court to declare that TWA's claim for costs not incurred by reason of or because of property damage are not covered.

On October 21, 1998, the trial court[7], after a hearing, granted partial summary judgment in favor of TWA. The court granted in part and denied in part TWA's motion for partial summary judgment on all affirmative defenses through which respondents contend that environmental response costs are not insured "damages." The court found that summary judgment as to certain respondents' affirmative defenses is inappropriate and unnecessary. However, the court found that environmental response costs might constitute damages for purposes of respondents' policies. The court concluded environmental response costs includes cost of corrective and other measures taken in response to the MCI claim initially filed by the EPA against TWA in 1998, including the 1989 Administrative Order on Consent. Nevertheless, the court found that the question of whether particular environmental measures taken by TWA are responsive to the MCI claim and are therefore damages under the policies are for the finder of fact. The court further denied respondents' motion for partial summary judgment on TWA's claim for costs not incurred by reason of or because of property damage. Additionally, the court denied TWA's motion for partial summary judgment requesting the trial court to declare that each and every one of its insurance policies is triggered.

On November 5, 1998, the trial court denied TWA's motion for partial summary judgment against AAU on all counts of the second amended petition. The trial court also denied respondents' motion for summary judgment on Counts I, II, and III of TWA's second amended petition. Furthermore, the trial court on November 10, 1998, granted respondents' motion for summary judgment based upon the owned property exclusion only as to costs incurred by TWA in connection with the

6. Honorable Julian L. Bush presiding.

7. Honorable John J. Riley presiding.

EPA claims that relate solely to damage to the MCI site. However, the trial court denied respondents' motion as to those costs incurred with respect to the EPA claims as they pertain to contamination of groundwater and to contamination that has migrated, through groundwater or otherwise, to property not owned, rented, occupied or used by TWA, or property outside TWA's care, custody or control.

On December 4, 1998, TWA filed a motion for leave to amend its Second Amended Petition.

On December 21, 1998, the trial court[8] granted post 1970 respondents' motion for summary judgment based on the polluter's exclusions contained in their policies. The court found that the polluter's exclusions in the policies apply to the contamination at the MCI site which is the subject of the EPA action brought against TWA for RCRA violations and the subsequent consent order. The court also noted that coverage may nevertheless be afforded under the pre–1970 respondents' policies which did not contain the polluter's exclusion language. On December 28, 1998, the trial court[9] denied TWA's motion for leave to file its Third Amended Petition.

On March 19, 1999, TWA filed a memorandum in support of its demand for a jury trial on all factual issues. On March 26, 1999, the trial court[10] set the case for trial to the court. On the court's own motion, it ordered a separate trial on the following claims or issues: 1) the damages, if any, payable by respondents, and 2) the claim of vexatious refusal to pay. The above issues or claims were set for jury trial, while the rest of the remaining issues of the Second Amended Petition (not disposed of by prior rulings) were set for trial by the court.

On August 2, 1999, the trial court,[11] after a bench trial, ruled in favor of the respondents, pre–1970 insurers, against TWA as to counts I and II of the Second Amended Petition. The trial court also dismissed the remaining counts of the Second Amended Petition, including claims of vexatious refusal to pay, as moot. TWA appeals and respondents cross-appeal.

## III. STANDARD OF REVIEW

■ Our review of an appeal from the grant of a motion for summary judgment is essentially de novo. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo.banc 1993). We review the record in the light most favorable to the party against whom judgment was entered. *Id.*

■ Furthermore, in reviewing a court-tried case, we will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). Appellate courts accept the evidence and inferences favorable to the prevailing party and disregard all contrary evidence. *Ralston Purina Co. v. Leggett*, 23 S.W.3d 697, 700 (Mo. App. E.D.2000). "While we defer to the trial court for findings of fact, we independently evaluate the court's conclusions of law." *Id.* "We will reverse the trial court's judgment if it is based on an erroneous application of the law." *Id.*

---

**8.** Honorable John J. Riley presiding.

**9.** Honorable John J. Riley presiding.

**10.** Honorable Robert H. Dierker, Jr. presiding.

**11.** Honorable Robert H. Dierker, Jr. presiding.

## IV. ARGUMENT

In its first point on appeal, TWA argues that the trial court erred in ruling that respondents had no duty to defend or indemnify it under the pre–1970 policies because it erroneously declared or applied Missouri law and its judgment was against the weight of the evidence. The trial court ruled that TWA failed to establish an "occurrence" during the periods of the pre–1970 policies. In addition, the trial court ruled that the "owned property" exclusion barred coverage for the MCI claims, and that TWA was not entitled to a defense against the MCI claims due to its failure to properly invoke coverage and tender the defense of those claims.

TWA alleges it satisfied its burden of proving "occurrences" and "happenings" triggering coverage under the pre–1970 policies. The policies provided that TWA is insured only as to occurrences and happenings, which take place during the coverage period. "Occurrence" is defined as:

An accident, or a continuous or repeated exposure to conditions, which results in bodily injury, or damage to or destruction of property, during the policy period, provided the bodily injury, or damage to or destruction of property, is accidentally caused. All damages arising out of such exposure to substantially the same general conditions shall be deemed to arise out of one occurrence.

"Happenings" is defined as "[a]n event. A series of events arising out of the same general cause shall be deemed to be a happening." [12]

The trial court concluded that:

[t]he term "occurrence" as used in the policies here at issue is probably ambiguous.... However, even construing the term in favor of the insured, TWA has failed to carry its burden to prove an occurrence giving rise to coverage. There is no satisfactory evidence that TWA's pre–1970 activities caused or contributed to cause the contamination which produced the EPA proceedings in 1988–89. That some contamination from pre–1970 activities probably reached groundwater falls short of proof by a preponderance of the evidence that the groundwater in fact was damaged. Although an occurrence, defined in terms of "accident," may be the result of a process, it was TWA's obligation to prove the occurrence. It is wholly speculative that, in 1988, groundwater contamination discovered at MCI was attributable to pre–1970 operations at any of the five sites mentioned in the evidence (surface impoundment, superhangar, ravine, barrel house/oleum still, end-of-runway dump).

TWA argues the trial court's ruling erroneously declares or applies Missouri law because: 1) although the trial court acknowledged that the term "occurrence" is ambiguous, it failed to construe that term in favor of TWA; 2) Missouri courts hold that the release of hazardous waste into the environment constitutes an "occurrence" triggering coverage under liability insurance policies; 3) the trial court's conclusion that TWA was obliged to prove the presence of "groundwater contamination" during the periods of the pre–1970 policies is belied by the policy language and contravenes Missouri law; and 4) the trial court failed to consider whether TWA had proved "happenings" triggering coverage under the "Catch–All" portion of the pre–1970 policies.

 "An insured must bring itself within the terms of the policy and must

---

12. The definitions of occurrences and happenings are from Associated Aviation Underwriters' policy. Other relevant policies contain similar provisions and definitions.

carry the burden of offering substantial evidence that the underlying claim is covered by the policy." *American States Ins. Co. v. Vortherms*, 5 S.W.3d 538, 543 (Mo. App. E.D.1999). In a declaratory judgment action, the trial court's judgment will be sustained unless it is not supported by substantial evidence or is against the weight of the evidence or the court has erroneously declared or applied the law. *Transamerica Ins. v. Pa. Nat. Ins.*, 908 S.W.2d 173, 175–176 (Mo.App. E.D.1995). "When reviewing findings of fact in a declaratory judgment action, we view the evidence and any concomitant reasonable inferences in the light most favorable to the prevailing party, disregarding evidence presented by the losing party unless it is favorable to the prevailing party." *Id.* at 176.

■ TWA's argument regarding the trial court's ruling on occurrence obfuscates the issue. Whether the term "occurrence" is ambiguous or not is irrelevant to the trial court's ruling. The issue here is TWA's failure to prove that its activities prior to 1970 contributed to the pollution that was the subject of EPA's proceedings in 1988–89. TWA, as the insured seeking to establish coverage, has the burden to prove that the claims at issue fell within the coverage afforded by the insurance policies. The insurance policies at issue provide coverage to TWA for liabilities arising from occurrences and happenings which takes place during its effective period. Thus, TWA was required to prove that the pollution, which was the subject of the EPA proceeding and for which it was seeking coverage, arose out of its activities prior to 1970. A review of the record in the light most favorable to the respondents, supports the finding of the trial court that TWA has failed to prove its activities prior to 1970 caused or contribut-

ed to the pollution which was the subject of the EPA's proceedings in the late 1980s.

TWA's argument regarding the trial court's failure to consider whether TWA had proved "happenings" triggering coverage under the "Catch–All" portion of the pre–1970 policies is not properly before us. TWA did not raise the issue at trial and did not raise the issue in its proposed findings of fact and conclusions of law. "An issue that was never presented to or decided by the trial court is not preserved for appellate review." *State ex rel Nixon v. American Tobacco Co.*, 34 S.W.3d 122, 129 (Mo.banc 2000). In this case, the issue was never presented or decided by the trial court, therefore, it is not preserved for appellate review. Moreover, even if the claim was raised before the trial court, it would not have made a difference in the trial court's ruling. The trial court's ruling that TWA did not prove that its activities prior to 1970 caused or contributed to the pollution which was the subject of EPA's 1988–89 proceedings, would have disposed of the claim.

Furthermore, TWA argues the trial court erred in ruling that the owned property exclusion barred coverage under the pre–1970 policies for the MCI claims. The trial court held that assuming TWA has established sufficient facts to show coverage, respondents have also proved by a preponderance of the evidence that the owned property exclusion applies to the claims of this case, other than the end-of-runway dump. Because we conclude that TWA has failed to establish sufficient facts to show coverage under the pre–1970 policies, we need not address this point.

TWA further argues the trial court erred in ruling that respondents had no duty to defend TWA because TWA did not properly invoke coverage and tender defense of the MCI claims. TWA claims that the trial court erred in its ruling and

it erroneously declared and applied Missouri law governing an insurance company's duty to defend its policyholder.

 The insurer's duty to defend is broader than its duty to indemnify. *McCormack Baron Mgt. v. American Guarantee,* 989 S.W.2d 168, 170 (Mo.banc 1999). Generally, the duty of an insurer to defend its insured is determined by comparing the language of the insurance policy with the allegations in the complaint. *Id.* "If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." *Id.* at 170–171. Furthermore, insurer must be given notice of the complaint or pleading, which would invoke the duty to defend. *See Rocha v. Metro. Property and Cas. Ins.,* 14 S.W.3d 242, 248 (Mo.App. W.D.2000) (the insured's failure to forward copy of amended petition to insurer was unexcused and, therefore, created presumption of prejudice, and the insurer owed no duty to defend against original allegation of conspiracy); *Dickman Aviation v. U.S. Fire Ins.,* 809 S.W.2d 149, 152–153 (Mo.App. S.D.1991); *Anderson v. Slayton,* 662 S.W.2d 575, 577–578 (Mo.App. W.D.1983) ("If the failure of the insured to forward the suit papers to the insurer is unexcused, prejudice automatically follows from the denial to the insurer of any opportunity to defend against the claim."); and *Hawkeye–Sec. Ins. Co. v. Iowa Nat. Mut. Ins. Co.,* 567 S.W.2d 719, 721 (Mo.App.K.C.D.1978) (even if insurer owed a duty to defend insured, insured's claim against insurer for defense was waived by insured's failure to notify insurer of the claim and suit).

 In the case at bar, the trial court, in its findings, noted that despite the multi-million dollar expense associated with TWA compliance with the 1988 and 1989 consent orders with the EPA, both TWA and AAU (primary insurer)[13] treated the matter with "remarkable coyness." The court noted that TWA never submitted anything resembling a formal claim to AAU prior to filing suit against its insurers in the state court of New Jersey in 1994, long after TWA had committed itself to many corrective measures. Also, AAU on its own part never classified any communication from TWA as a claim until 1992. The course of dealing between TWA and AAU clearly shows that when TWA wanted to make a claim, there was no misunderstanding on either side. Also, when AAU was confronted with explicit environmental damage claims, it responded with commonplace "reservation of rights" letters. Thus, the trial court specifically found that TWA never made a claim against its insurers for either defense or indemnity in regard to the EPA proceedings. The record supports the trial court findings. TWA submitted over 16,000 claims to AAU for handling. TWA's manager of claims from 1979 to 1990, testified that AAU responded promptly and fairly to TWA's claims. The record does not support that TWA submitted this claim for defense or indemnity until the filing of its suit against its insurers in 1994, long after it had settled with the EPA and had committed itself to many corrective measures. Therefore, we conclude that the trial court did not err in its finding.

In its second point on appeal, TWA argues the trial court erred in granting partial summary judgment in favor of respondents, ruling that respondents had no duty to defend or indemnify TWA under the

---

**13.** The trial court found that neither TWA nor AAU ever notified the London Insurers (excess insurer) of the EPA proceedings at MCI and that the first notice of a claim received by the London Insurers occurred with the filing of the New Jersey lawsuit.

post–1969 policies because of the pollution exclusion contained in those policies. First, TWA argues the trial court improperly placed the burden of proof on TWA, rather than respondents who were relying on an exclusion to deny insurance coverage. Second, TWA argues the trial court improperly overlooked the overwhelming evidence establishing that "sudden and accidental" pollution exclusion is ambiguous. Third, it argues that the trial court failed to apply properly the law governing an insurance company's duty to defend. Finally, it argues that the trial court improperly entered judgment on TWA's claims for estoppel and public policy.

 "An insurer's duty to defend a suit against its insured is determined by the language of the policy and the allegations asserted in the plaintiff's petition." *American States Ins. Co. v.. Mathis*, 974 S.W.2d 647, 649 (Mo.App. E.D.1998). The insured has the burden of showing that the loss and damages are covered by the policy; the insurer has the burden of demonstrating the applicability of any exclusion on which it relies. *Id.*

In the case at bar, the trial court granted partial summary judgment to post–1969 respondents on the basis of the pollution exclusion contained in the policies. The exclusion language was common to all respondents' policies in effect between 1970 and 1991. The exclusion in effect from January 1, 1970, to November 1, 1985, provides in pertinent part:

This insurance does not apply:

8. To *bodily injury, personal injury* or *property damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water;

but the exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental; . . . .

(emphasis added)

The pollution exclusion in effect from November 1, 1985, to October 1, 1991, did not apply to liability for certain damages because of certain specified events. However, the pollution exclusion:

. . . . shall apply whether or not the discharge, dispersal, release or escape:

• Results from the *Insured's* activities or the activities of others;

• Is sudden, gradual, accidental, foreseeable, expected or fortuitous; . . . .

 The trial court in granting partial summary judgment based on the pollution exclusion stated the following:

An insurer has the burden of proving that the loss sustained was within a policy exclusion, whereas the insured bears the burden of making a prima facie case that coverage is triggered by the loss. *Grossman Iron & Steel Co. v. Bituminous Cas. Corp.*, 558 S.W.2d 255, 259–60 (Mo.App.1977). The majority rule places the burden of proving an exception to a policy exclusion on the insured. 21 *Appleman's Insurance Law* Section 12275 (1998 Supp.). This Court finds that the majority rule is consistent with Missouri's rule that the insured bears the burden of making a prima facie case that coverage exists. See, *Grossman, supra.;* See also, *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511 (11th Cir.1997); *Aeroquip Corp. v. Aetna Cas. and Sur. Co.*, 26 F.3d 893, 894–95 (9th Cir.1994); *Guaranty Nat'l Ins. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir.1998).

The "sudden and accidental" provision, which TWA seeks to take advantage of, is an exception to the pollution exclusion. TWA's argument was that the exception to

the exclusion for sudden and accidental releases is applicable in this instance. Thus, TWA bears the burden to make a prima facie case that it is entitled to coverage because the exception to the pollution exclusion applies. Therefore, the trial court did not improperly place the burden of proof on TWA.

TWA argues the trial court improperly overlooked the overwhelming evidence demonstrating the ambiguity of the "sudden and accidental" pollution exclusion. It claims "sudden and accidental" is ambiguous because, among other things, the operative term "sudden" is defined in differing ways. It also claims courts throughout the country are undeniably split on the meaning of the "sudden and accidental" clause and that respondents and the insurance industry as a whole represented that the "sudden and accidental" pollution exclusion does not bar coverage for gradual pollution that was neither expected nor intended. TWA further claims that "sudden and accidental" exception may be reasonably interpreted without a temporal connotation.

 When interpreting the language of an insurance contract, appellate courts give the language its plain meaning. *Shahan v. Shahan,* 988 S.W.2d 529, 535 (Mo.banc 1999). "The plain or ordinary meaning is the meaning that the average layperson would understand." *Id.* In determining the ordinary meaning, we consult standard English language dictionaries. *Id.* "Applying rules of construction is unnecessary when a contract provision is clear and unambiguous." *Id.* "Courts are not permitted to create ambiguities in order to distort the language of an unambiguous policy." *Id.*

 Furthermore, in the absence of the existence of an ambiguity, appellate courts must enforce the policy as written, giving the language of the policy its ordinary meaning. *American States Ins. Co.*

*v. Mathis,* 974 S.W.2d at 649. "We read the provisions of the insurance policy in the context of the policy as a whole and give the language used its ordinary meaning unless another meaning is plainly intended." *Id.*

No Missouri case has addressed the issue of whether "sudden and accidental" in pollution exclusion clauses of insurance policies is ambiguous. However, the 8th Circuit Court of Appeals, applying Missouri law, held that "sudden and accidental" is unambiguous under Missouri law. *Aetna Cas. & Sur. Co. v. General Dynamics Corp.,* 968 F.2d 707, 710 (8th Cir.1992). In *Aetna,* the district court held that "sudden and accidental" includes unexpected events occurring over an extended period of time. *Id.* The 8th Circuit in rejecting the district court's holding defined accidental as meaning that which happens by chance or fortuitously, without intention or design, and which is unexpected, unusual and unforeseen. *Id.* Then, it reasoned that Missouri law requires all terms of an insurance contract to be given meaning and since "accidental" includes the unexpected, the term "sudden" cannot be given a contradictory meaning that would render the term "accidental" meaningless. *Id.* It concluded that the district court's construction gave no effect to the word "sudden." *Id.* "Sudden" when considered in its plain and easily understood sense is defined with a temporal element that joins together conceptually the immediate and the unexpected. *Id.* Hence, the term "sudden" must include a temporal element such that it is abrupt, immediate and unexpected. *Id.* In *Liberty Mutual Ins. Co. v. FAG Bearings Corp.,* 153 F.3d 919, 922–923 (8th Cir.1998), the court affirmed its decision and ruled that the interpretation is a correct one under Missouri law.

 In this case, the exception to the pollution exclusion requires the discharge to be both "sudden and accidental." Irre-

spective of whether the term "sudden" must be interpreted with a temporal connotation or not, the exception requires the discharge to be also accidental. The record supports the trial court's determination that the discharges at the MCI site by TWA were deliberate and therefore were non-accidental. The discharges were part of TWA's operation at the MCI site. TWA discharged its waste products used in the overhaul of its aircraft at the MCI site. After RCRA was enacted in 1976, TWA was expected to terminate its hazardous waste operations or apply for a permit under RCRA when it became effective in 1980. TWA notified the EPA of its operations, but ignored the effects of the statute. TWA was aware of the implications of RCRA to its operation at MCI. Such deliberate and frequent disposal of waste that resulted in pollution is not accidental. Thus, TWA does not fall within the exception of "sudden and accidental" clause of the pollution exclusion. Point denied.[14]

TWA further argues that the trial court in granting summary judgment improperly overlooked the "potential" for coverage under the post 1969 policies and respondents' duties to defend TWA under those policies until that "potential" was extinguished. TWA argues the trial court should have determined that a duty to defend existed prior to the grant of the motion for summary judgment. As already discussed, TWA never made a claim against its insurers for either defense or indemnity in re-

gard to the EPA proceedings until it filed its suit in 1994, long after it had settled with the EPA and had committed itself to many corrective measures. Point denied.

 In its third point on appeal, TWA argues that the trial court abused its discretion in denying TWA leave to amend its Second Amended Petition. TWA alleges that through discovery it had obtained documents and other information that reflected the existence of numerous government investigations and proceedings at MCI, predating the 1988 and 1989 EPA proceedings, including facts establishing that the 1988 and 1989 EPA proceeding arose out of the joint 1985 MDNR and EPA investigation and the 1986 EPA investigation. TWA alleges that justice was subverted in that it sustained hardship by virtue of the trial court's denial of leave to amend. It further alleges that good cause supported its request for leave to amend and that respondents would have suffered no prejudice by the amendment.

 Rule 55.33(a) provides that [a] pleading may be amended once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the pleading may be amended at any time within thirty days after it is served. Otherwise, the pleading may be amended only by leave of court or by written consent of the adverse party; and leave

14. Our holding on this point likewise disposes of TWA's contention on appeal that the trial court erred in failing to address its claims that respondents should be estopped from enforcing their policies in a manner inconsistent with their prior representations to state regulators that the "sudden and accidental" exclusion was merely a clarification and not a further restriction on previously available coverage for gradual pollution or and that respondents' interpretations otherwise violated Missouri public policy. Even if gradual pollution could be covered under certain circumstances, it was still required under the policies to be "accidental" pollution and the trial court properly found that the pollution at issue in this case was not "accidental" within the meaning of the policies. Thus, TWA's estoppel and public policy claims could not, as a matter of law, defeat Respondents' entitlement to judgment and the trial court did not err in entering summary judgment without specifically addressing them.

shall be freely given when justice so requires.

"[T]he purpose of the grant of an amendment is to allow a party to assert a matter unknown or neglected from inadvertence at the time of the original pleading." *Kenley v. J.E. Jones Const. Co.*, 870 S.W.2d 494, 498 (Mo.App. E.D.1994). Parties to litigation do not have absolute rights to file an amended petition. *Kanefield v. SP Distributing Co., L.L.C.*, 25 S.W.3d 492, 498 (Mo.App. E.D.2000). In order to determine whether leave should be granted the courts look at the following: the reasons for the moving party's failure to include the matter in the original proceedings; whether there is any prejudice to the non-moving party; and whether there will be hardship to the party requesting amendment if the request is denied. *Id.* at 499. "The trial court's denial of leave to amend is presumed correct and the burden is on the proponent to demonstrate that the trial court clearly and palpably abused its discretion." *Id.* at 498. In order to show an abuse of discretion, a party has to demonstrate that the trial court's ruling is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration. *Id.* at 498–499.

In the case at bar, the motion to amend was filed more than three years after the initial petition, which TWA had amended at least twice in 1995 and in 1997. The proposed amendments did not present any new facts or circumstances that could not have been raised earlier. The EPA investigations and proceedings were conducted at the MCI site. TWA was a party to the investigations and proceedings. It is ironic that TWA would claim not to have known about the EPA proceedings of which it was part via discovery many years later. We do not find the denial of leave to amend by the trial court to be so arbitrary as to shock our sense of justice, nor any indication that the trial court did not carefully consider the motion. Point denied.

In its final point on appeal, TWA argues the trial court committed reversible error when it overruled TWA's request for a jury trial. TWA alleges it had a right to a jury trial on all disputed factual issues because TWA's right to a jury trial was statutorily guaranteed and it never waived its request for a jury trial.

The trial court denied TWA's request for jury trial on counts I and II of the Second Amended Petition on two grounds. First, the trial court concluded that TWA in its petition, sought mandatory equitable relief in the form of an order to respondents to provide defense in connection with ongoing EPA proceedings involving the MCI and other sites. The trial court concluded that under Missouri law, which gives priority to equity claims, TWA lacks a right to trial by jury on the issue necessary to resolve the equitable claims. Second, the court found that although TWA moved for trial by jury, which was denied, TWA made no objection on the record prior to commencement of trial on June 14, 1999. The trial court therefore concluded that TWA waived its right to a jury trial.

■ Rule 69.01(b)(4) provides that a party is deemed to have waived trial by jury if a party enters into trial before the court without objection. *See also*, Section 510.190.2(4), RSMo 1994. Where a party's request for jury trial is denied before trial, the party's failure to object before entering into a trial to preserve the issue for appellate review is deemed a waiver, even if the party is entitled to jury trial. *State ex rel. State Highway Commission v. Demarco*, 445 S.W.2d 379, 382 (Mo.App. Spfd.D.1969). *See also, Kansas City DMDC v. Corrigan Associates*, 868 S.W.2d 210, 225 (Mo.App. W.D.1994); and *In re S.M.W.*, 485 S.W.2d 158, 161–162 (Mo .App.K.C.D.1972).

■ In the present case, the trial court found that TWA did not object on the record prior to the commencement of trial

on June 14, 1999. A review of the record supports the trial court's finding. TWA's failure to object on the record prior to entering into trial is deemed a waiver, even though TWA made a prior written demand for jury trial, which was denied. Therefore, the trial court correctly determined that TWA waived its right to a jury trial. Point denied.

## V. RESPONDENTS' CROSS–APPEAL

In view of our determination that TWA is not entitled to coverage under any of the policies at issue in this case, respondents are not aggrieved by any aspect of the judgments raised in their cross-appeals and the cross-appeals are therefore dismissed as moot. Based on the foregoing, we affirm the judgments of the trial court.

LAWRENCE G. CRAHAN, J., and GEORGE W. DRAPER III, J., concur.