CAMERON MUTUAL INSURANCE COMPANY, Respondent,

v.

Jennifer D. WOODS, a minor, Appellant,

and

James Robert Grainger and Byron Grainger, Defendants.

No. WD 60582.

Missouri Court of Appeals, Western District.

Nov. 19, 2002.

---

Jeffery Allen Hanna, Warrensburg, MO, for Appellant Jennifer Woods.

Robert E. Harris, Warrensburg, MO, for Defendants James and Byron Grainger.

Before HARDWICK, P.J., ELLIS and HOLLIGER, JJ.

LISA WHITE HARDWICK, Judge.

This appeal arises from a declaratory judgment determination that a farm liability insurance policy issued by Cameron Mutual Insurance Co. did not provide coverage for dog-bite injuries sustained by Jennifer Woods. The trial court held that the dog's owner, Byron Grainger, was not an insured under a provision in the policy which applied to "persons in the course of performing domestic duties that relate to the insured premises." Ms. Woods appeals, claiming the trial court's *in pari materia* construction of the policy was too restrictive. Because we find that the trial court reached the correct result in denying coverage under the policy, we affirm.

## Factual and Procedural History

Dr. James Whiteman is the owner of eighty-one acres of farm property located in Johnson County, Missouri. Dr. Whiteman has never farmed the land or resided on the property.

Several years prior to 1991, Dr. Whiteman began leasing the farm property to James Grainger to conduct a cattle operation. No restrictions were placed on Mr. Grainger's use of the property for the cattle operation. Dr. Whiteman was not responsible for and did not perform any of the upkeep, maintenance, repair, or improvements to the farm while it was leased by Mr. Grainger. Dr. Whiteman did not have any interest in the cattle operation and did not receive any profits from it.

In 1991, James Grainger formed a partnership with his son, Byron Grainger, relative to the cattle operation. That same year, Byron placed a trailer home on the farm property and began living there. Byron also built a boundary fence around the farm and installed a loafing shed.

On November 5, 1996, Byron discovered that a section of the boundary fence line was down and in need of repair. While he was getting tools from his trailer home to make the repairs, Byron's dog attacked Jennifer Woods as she walked home from school. The dog attack began in the roadway near the intersection of county roads SW 601 and SW 200 and continued onto the farm property.

Following the attack, Ms. Woods filed a civil action against Byron Grainger seeking damages for the dog-bite injuries she sustained. On February 17, 1999, the circuit court entered judgment in favor of Ms. Woods and ordered Byron to pay her damages of $326,731.25.

At the time of the attack, Dr. Whiteman had a Farm Personal Liability Policy with Cameron Mutual to insure the farm prop-

erty. Ms. Woods and Byron Grainger made separate claim demands under the policy during the pendency of Ms. Woods' civil action. Both asserted that the policy covered Byron as an insured, and they demanded that Cameron Mutual settle Ms. Woods' lawsuit before judgment was entered. Cameron Mutual denied coverage.

On August 3, 1999, Cameron Mutual filed a Petition for Declaratory Judgment against Byron Grainger, James Grainger, and Ms. Woods. The petition sought a declaration that Dr. Whiteman's insurance policy did not provide coverage for the Graingers relative to the dog attack nor any damages awarded to Ms. Woods. Cameron Mutual also sought a declaration that it was not obligated to provide the Graingers with a defense against any claims brought by Ms. Woods.

Ms. Woods filed her Answer claiming that Byron was an insured under Dr. Whiteman's policy, that Cameron Mutual had a duty to represent and defend Byron in her civil action, and that Cameron Mutual was obligated to pay her the amount of the judgment entered against Byron, plus post-judgment interest. Neither of the Graingers filed an answer to Cameron Mutual's petition or appeared to defend the matter.

On April 26, 2001, the cause was submitted to the trial court on stipulated facts. In her submission, Ms. Woods relied entirely upon a provision in the policy providing that "persons in the course of performing domestic duties that relate to the insured premises" are insureds under the policy. Ms. Woods argued that Byron was performing a domestic duty when he started to repair the boundary fence line and that he was, therefore, an insured under the policy.

Subsequently, the trial court entered judgment declaring that Byron was not an insured under Dr. Whiteman's policy and that Cameron Mutual had no obligation to provide him with a defense or to pay any damages recovered by Ms. Woods against him related to the dog attack. The judgment stated:

> Byron Grainger was neither a "domestic employee" nor a person who through his lease or any separate legal agreement had a duty to perform "domestic duties." Byron Grainger is not an insured under the plain language of the policy.

Ms. Woods appeals this judgment.

## Standard of Review

In reviewing a court-tried case, we must affirm the judgment of the trial court unless it is unsupported by substantial evidence, against the weight of the evidence, or erroneously declares or applies the law. *State Farm Mut. Auto. Ins. Co. v. Sommers,* 954 S.W.2d 18, 19 (Mo. App. E.D.1997). Where the case is tried on stipulated facts, "the only question on review is whether the trial court drew the proper conclusions from the stipulated facts." *Shelter Mut. Ins. Co. v. See,* 46 S.W.3d 65, 67 (Mo.App. W.D.2001). However, "when there exist ultimate facts or factual inferences to which the parties have not stipulated, then we review the conceded facts in a light most favorable to the respondent and disregard inferences favorable to appellant." *Adams v. White,* 488 S.W.2d 289, 293 (Mo.App. S.D.1972). "Where the underlying facts are not in question, disputes arising from the interpretation and application of insurance contracts are matters of law for the court." *Southeast Bakery Feeds, Inc. v. Ranger Ins. Co.,* 974 S.W.2d 635, 638 (Mo.App. E.D.1998).

## Issue on Appeal

In her sole point on appeal, Ms. Woods contends the trial court erred in restricting the policy's unambiguous definition of "do-

mestic duties" by construing it *in pari materia* with a separate provision applicable to "domestic employees." The policy defines domestic employee as "a person employed by an Insured to perform duties that relate to the use and care of the insured premises." Since the judgment stated that Byron Grainger was not an insured because he was not a "domestic employee," Ms. Woods argues the court improperly limited its application of the term "domestic duties" to a person employed by the insured.

■ Regardless of the trial court's reasoning, "[i]n reviewing this court-tried case, our primary concern is the correctness of the trial court's result, not the route taken to reach it." *Smith v. Estate of Harrison*, 829 S.W.2d 70, 73 (Mo.App. E.D.1992). "Thus, we will affirm the judgment if cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient." *Venture Stores, Inc. v. Pac. Beach Co.*, 980 S.W.2d 176, 180 (Mo.App. W.D. 1998). Upon review of the record in this case, we are satisfied that the trial court reached the correct result for the following reasons.

■ Although Cameron Mutual brought the declaratory judgment action, Ms. Woods, as a party seeking to recover under the policy, bore the burden of proving that coverage existed under the insurance policy.[1] *Shelter Gen. Ins. Co. v. Siegler*, 945 S.W.2d 24, 27 (Mo.App. E.D.1997); *Citizens Ins. Co. of Am. v. Leiendecker*, 962 S.W.2d 446, 451 (Mo.App. E.D.1998). Accordingly, Ms. Woods was required to prove by a preponderance of the evidence that Byron Grainger was an insured under the policy at the time of the dog attack. *Siegler*, 945 S.W.2d at 27.

■ In asserting that Byron Grainger was an insured under the policy, Ms. Woods has relied entirely upon a portion of the policy's definition of an "insured," which states: "**Insured** means ... persons in the course of performing domestic duties that relate to the **insured premises**." [2] Ms. Woods contends that Byron

---

1. As a judgment creditor of Byron Grainger, Woods stands in the shoes of Byron and has the same rights that Byron would have against Cameron Mutual if Byron had paid the judgment and then sought reimbursement from Cameron Mutual. *James v. Paul*, 49 S.W.3d 678, 683 (Mo. banc 2001). Accordingly, Woods must bear the same burden that Grainger would have borne of establishing by substantial evidence that the claim was covered under the insurance policy. *Peck v. Alliance Gen. Ins. Co.*, 998 S.W.2d 71, 74 (Mo. App. E.D.1999).

2. The Principal Personal Liability Coverages set forth:

    Coverage L—Liability—**We** pay, up, to **our** limit, all sums for which an **insured** is liable by law because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies. **We** will defend a suit seeking damages if the suit resulted from **bodily injury** or **property damage** not excluded under this coverage.

The definitions section of the policy states:

**Insured** means:

a. **you;**

a. **your** relatives if residents of **your** household;

a. persons under the age of 21 in **your** care or in the care of **your** resident relatives;

a. **your** legal representative, if **you** die while insured by this Farm Personal Liability Coverage. This person is an **insured** only for liability arising out of the **insured premises.** An **insured** at the time of **your** death remains an **insured** while residing on the insured premises;

a. persons using or caring for watercraft or animals owned by an insured to which this insurance applies (This does not include persons using or caring for watercraft or animals in the course of business or without the owner's consent.);

Grainger was performing a domestic duty when he was repairing the boundary fence line at the time of the dog attack and, therefore, should be considered an insured under the policy. In response, Cameron Mutual argues that Byron was not performing a "domestic duty" in repairing the boundary fence line. Accordingly, the issue before us is whether the stipulated fact that Byron was in the process of performing repairs on the fence at the time of the dog attack established by substantial evidence that he was in the course of performing a "domestic duty" as provided in the insurance policy.

■■■ "[I]n the absence of the existence of an ambiguity, appellate courts must enforce the policy as written, giving the language of the policy its ordinary meaning." *Trans World Airlines, Inc. v. Associated Aviation Underwriters*, 58 S.W.3d 609, 622 (Mo.App. E.D.2001). "An ambiguity exists where the language in a policy is reasonably and fairly open to different constructions." *Southeast Bakery Feeds*, 974 S.W.2d at 638. We find no ambiguity with regard to the term "domestic duty."

■■■ "When interpreting the language of an insurance contract, appellate courts give the language its plain meaning." *Trans World Airlines*, 58 S.W.3d at 622. " 'The plain or ordinary meaning is the meaning that the average layperson would understand.' " *Id.* (quoting *Shahan*

v. *Shahan*, 988 S.W.2d 529, 535 (Mo. banc 1999)).

■■■ "In determining the ordinary meaning, we consult standard English language dictionaries." *Id.* "The dictionary defines the adjective 'domestic' as 'belonging to the house or home; pertaining to one's place of residence and to the family; as, *domestic* life, *domestic* duties.' " (emphasis in original) *United Fire & Cas. Co. v. Gravette*, 182 F.3d 649, 655 (8th Cir. 1999) (quoting *Webster's New 20th Century Dictionary* 543 (2d ed. 1979)).[3] Based upon the common understanding of the meaning of the term "domestic," an average layperson would interpret "domestic duties," as used in a farm liability insurance policy, to mean those duties pertaining to a household or a private place of residence that are performed on the insured farm property but are not directly related the farm's business operations.

In asserting that Byron Grainger was performing a domestic duty at the time of the dog attack, Ms. Woods relies on the stipulated fact that Grainger was in the process of repairing the boundary fence line at the time of the attack. However, the repair of the boundary line fence of an eighty-one-acre cattle farm is not necessarily a domestic duty, and none of the stipulated facts establish a connection between those repairs and a household or a private place of residence. In fact, a reasonable inference may be drawn from the stipulated facts that the fence was built

---

a. persons in the course of performing domestic duties that relate to the **insured premises;**

a. persons in the course of acting as **your** real estate manager for the **insured premises;** and

a. a person while performing duties as an employee of an **insured** with respect to farm implements and other vehicle covered by this Farm Personal Liability Coverage.

3. Similarly, Webster's Third New International Dictionary 671 (1993), defines "domestic" as "a. relating to the household or the family: concerned with or employed in the management of a household or private place of residence ... b. connected with the supply, service and activities of households and private residences."

and maintained by the Graingers for the purpose of furthering the Grainger's cattle farming business and did not have any relationship to a household or place of residence.

We need not consider whether the policy was improperly limited by an *in pari materia* construction, because the plain and unambiguous meaning of "domestic duties," in the general context of this farm liability policy, supports the trial court's judgment that insurance coverage did not exist for Ms. Woods' dog-bite injuries. Ms. Woods failed to present substantial evidence that the repair of the boundary fence line had any relationship to a residence on the farm premises or served any other domestic purpose. Accordingly, she failed to meet her burden of proving that Byron was "in the course of performing domestic duties that relate to the insured premises" at the time of the attack. Because Ms. Woods failed to establish by substantial evidence that Byron was an insured under the Cameron Mutual policy at the time of the dog attack, the trial court correctly held that the policy did not afford coverage for her injuries related to that attack.

The judgment is affirmed.

All concur.