**Mark LAGERMANN and Shelly Lagermann, Respondents,**

v.

**FARM BUREAU TOWN AND COUNTRY INSURANCE COMPANY OF MISSOURI, Appellant.**

No. SD 30721.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 31, 2011.

Motion for Rehearing or Transfer Denied Nov. 23, 2011.

Application for Transfer Denied Jan. 31, 2012.

Samuel P. Spain, Spain, Miller & Spain, LLC, Poplar Bluff, for Appellant.

John M. Albright and Daniel T. Moore, Poplar Bluff, for Respondents.

ROBERT S. BARNEY, Judge.

Farm Bureau Town and Country Insurance Company of Missouri ("Appellant") appeals the judgment of the trial court which found in favor of Mark Lagermann ("Mr. Lagermann") and Shelly Lagermann ("Mrs. Lagermann") (collectively "Respondents") on an action involving the denial of coverage by Appellant under a homeowner's insurance policy for damage that occurred when their garage collapsed due to the weight of ice and snow that had collected on its roof during an ice storm. Appellant asserts four points of trial court error. Point II is dispositive. It posits trial court error on the basis that Respondents did not prove all the elements of a cause of action for breach of an oral contract to insure their garage. We affirm the judgment of the trial court.

Viewing the evidence in the light most favorable to the trial court's judgment, *Gen. Motors Acceptance Corp. v. The Windsor Group, Inc.,* 103 S.W.3d 794, 796 (Mo.App.2003), the record reveals Respondents are the owners of property in Wayne County, Missouri, upon which is located a mobile home and a 30 foot by 50 foot outbuilding which they referred to as "the garage." Having always kept the structures on their property insured, in the fall of 2008 Respondents began "calling agents around Piedmont ... getting quotes." Mrs. Lagermann contacted Jeff Parker ("Mr. Parker"), an insurance agent employed by Appellant, via telephone. Following several phone calls, Mr. Parker came to Respondents' property in order to give them an insurance quote. According to Mrs. Lagermann, Mr. Parker told her that "basically this policy covers everything from wind and rain to civil unrest" and he characterized it as the "best" policy. She related Mr. Parker made no express mention of levels of coverage associated with the policy.[1] Mrs. Lagermann then informed Mr. Parker that Respondents desired to have coverage under the policy proposed by Mr. Parker and Mr. Parker told Mrs. Lagermann to come by his office to fill out an application. Thereafter, Mr. Lagermann went by Mr. Parker's office to fill out and sign a "PROTECTOR APPLICATION" ("the Application") which contained, *inter alia,* a "SCHEDULE OF OTHER STRUCTURES" including the item "GARAGE/1" with a coverage amount of $30,000,000 and a yearly premium of $133.88. Also included on the application was a "Membership Number" of "0640477" and in the block designated as

---

1. According to Mr. Parker, he did not mention the perils of collapse from ice and snow to either of the Respondents nor did they ask about it. He further denied telling Respondents they were obtaining "full coverage."

"Period" was the following notation: "Coverage begins on: 9/8/2008" and "Coverage expires on: 9/8/2009." Mr. Lagermann gave Mr. Parker a check for the required premiums to begin coverage.

Also, at that time Mr. Parker gave Mr. Lagermann a document entitled "PROTECTOR ILLUSTRATION" ("the Illustration") containing this table:

| Location: 1 PROTECTOR SERIES 7 ACTUAL CASH VALUE OF DWELLING PROPERTY LOCATED IN WAYNE (COUNTY CODE 110) AT HWY 34 | | |
|---|---|---|
| **YEAR BUILT: 1996 SINGLE–WIDE MOBILE HOME** | **Amount** | **Premium** |
| COVERAGE A: DWELLING (SINGLE–WIDE MOBILE HOME) OWNER OCCUPIED (O) WOOD HEAT: NONE QG–F | $20,000.00 | $378.20 |
| Deductible: $1000 | | |
| ABC Package Policy Discount (already included in premium) | $ 6.00 | |
| **COVERAGE B: OTHER STRUCTURES** | $30,000.00 | $133.88 |
| DEDUCTIBLE: $1,000 | | |
| **COVERAGE C: CONTENTS** | $50,000.00 | $ 40.00 |
| DEDUCTIBLE: $1,000 | | |
| REPLACEMENT COST SETTLEMENT | | $ 40.00 |
| **COVERAGE D: EXTRA EXPENSE** 20% of Coverage A: | $ 4,000.00 | |
| . . . | | |
| **Total Coverage: $657.08**  **Mo: $59.13**  **Qtr: $172.89**  **Semi–Ann: $328.54** | | |

**THIS IS NOT A BINDER OF INSURANCE COVERAGE.** No insurance coverage is afforded until coverage is bound through a Missouri Farm Bureau agent.

There were no particular exclusions or levels of coverage listed either on the Application or the Illustration signed by Mr. Lagermann. According to Respondents, they never received a copy of their insurance policy.

On January 28, 2009, following an ice storm, the garage roof collapsed under the weight of snow and ice. Respondents filed a claim with Appellant and Mr. Parker dispatched an insurance adjuster to survey the damage. After the insurance adjuster visited the property, Respondents were informed their policy did not cover the damage to the garage due to the weight of ice and snow. It was explained that they had purchased only "level one protection" which did not insure perils arising from damage due to ice and snow. Mrs. Lagermann then requested a full copy of her insurance policy from Appellant. The "INFORMATION PAGE" ("the Information Page") attendant to the policy, which was received by Respondents in the mail on February 19, 2009, provided, *inter alia*:

| SECTION I | | | |
|---|---|---|---|
| AMOUNT OF INSURANCE | DEDUCTIBLE PER OCCURRENCE | THE COVERAGES AND OPTIONS PROVIDED BY THIS POLICY ARE: | PREMIUM |
| $20,000 | $1000* | A. DWELLING 1, 1 FAMILY OWNER SINGLE WIDE MOBILE HOME IN PROTECTION CLASS 9 | $359.29 |
| | | . . . INCLUDES LEVEL ONE PROTECTION ACTUAL CASH VALUE SETTLEMENT OPTION AE . . . | $ 14.25 |

| | | | |
|---|---|---|---|
| | | . . . | |
| $30,000 | $1000* | B. OTHER STRUCTURES—SEE AT-TACHED SCHEDULE OPTION AE . . . | $127.19 |
| | | . . . | |
| **Loss Score Category G** | | **TOTAL POLICY PREMIUM** | **$624.23** |

When Appellant continued to deny Respondents' claim for coverage, Respondents initiated the present lawsuit.

In their "PETITION," Respondents asserted the garage was covered under the "OTHER STRUCTURES" provision of the policy which provided that:

> [t]his policy provides coverage for the described Other Structures only if Other Structures is shown on the Information Page(s) and a premium is listed for the Other Structures. We cover other structure(s) shown on the Information Page under Coverage B up to the amount of the insurance shown on the Information Page(s).

In its Answer, Appellant admitted it issued the policy; that " 'other structures' are covered under the policy but ... the policy speaks for itself in regard to the scope of said coverage;" and that the garage was destroyed as the result of "ice and snow accumulation." However, Appellant stated Respondents "only purchased 'level one protection' for 'other structures' " and such coverage does not cover damage caused by "[t]he weight of ice, snow or sleet...." Appellant pled no other defenses.

A trial in this matter was held on April 27, 2010. There is no question the pleadings were amended by implied consent of the parties to include an allegation of an oral contract between Appellant and Respondents to insure both the mobile home and the garage. *See* Rule 55.33(b).[2] At the conclusion of the evidence, the trial court took the matter under advisement.

On June 23, 2010, the trial court issued its "FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT." The trial court concluded Mr. Parker told Mrs. Lagermann "that the coverage [Appellant] offered would be the widest coverage there was and it would cover 'everything' from 'wind and rain to civil unrest;' " that neither the Illustration nor the Application included any information about the level of coverage provided under the policy; that Mr. Parker's recitation of the conversation he had with Mrs. Lagermann was not credible; that Appellant "failed to forward a copy of the [Information P]age and the policy" to Respondents such that they had no knowledge as to what perils were covered by their policy; and that Respondents were not informed about the existence of different levels of coverage until after they filed their claim for damage to the garage. As a result, the trial court concluded, *inter alia*, that

> [n]either the [Illustration], which was the only document received by [Respondents] from [Appellant] prior to the date

---

**2.** Rule 55.33(b) provides:

> [w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

*See Hall v. Hall*, 53 S.W.3d 214, 219 (Mo.App. 2001); *Green v. Study*, 286 S.W.3d 236, 243 (Mo.App.2009).

All rule references are to Missouri Court Rules (2010).

of the loss nor the [A]pplication makes any mention of a particular level of coverage.... This is coupled with the fact that [Mr. Parker] failed to inform [Respondents] that there was an exclusion for snow and ice.... The Court notes further that the [Information P]age and, in this case, the [Illustration], which was the only document given to [Respondents] prior to the loss, was the document most likely to be read by the insured. The [Illustration] did, in fact, contain the terms requested by [Respondents].

As a result, the trial court adjudged Respondents were entitled to $30,000.00 plus interest for the loss of the garage. This appeal followed.

On appellate review, the trial court's judgment will be affirmed unless there is no substantial evidence to support the decree, it is against the weight of the evidence, or it erroneously declares or apples the law. *Smith ex rel. Stephan v. AF & L Ins. Co.,* 147 S.W.3d 767, 773 (Mo. App.2004). Further, "[w]hen reviewing a court-tried case, we view all evidence and inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences." *Gen. Motors,* 103 S.W.3d at 796. As always, our primary concern " 'is the correctness of the trial court's result, not the route taken to reach it.' " *Cameron Mut. Ins. Co. v. Woods,* 88 S.W.3d 896, 900 (Mo.App.2002) (quoting *Smith v. Estate of Harrison,* 829 S.W.2d 70, 73 (Mo.App.1992)). "Thus, we will affirm the judgment if cognizable under any theory, regardless of whether the reasons advanced by the trial court are wrong or not sufficient.' " *Id.* (quoting *Venture Stores, Inc. v. Pac. Beach Co.,* 980 S.W.2d 176, 180 (Mo.App.1998)). Being a court-tried case, the credibility of a witness and the weight to be given such testimony " 'is a matter for the trial court,

which is free to believe none, part, or all of any witness's testimony.' " *Buckner v. Castro,* 306 S.W.3d 655, 659 (Mo.App.2010) (quoting *Kirkpatrick v. Webb,* 58 S.W.3d 903, 905–06 (Mo.App.2001)).

We begin with Appellant's second point relied on wherein Appellant maintains the trial court erred in entering judgment in favor of Respondents "on a theory of breach of an oral contract of insurance" because Respondents "did not prove all of the elements of this cause of action in that no substantial evidence was presented of an oral agreement to insure [Respondents'] property against the risk of collapse from the weight of ice and snow."

In our review of Appellant's second point relied on we are guided by the principles set out in *Chailland v. M.F.A. Mutual Ins. Co.,* 375 S.W.2d 78 (Mo.1964).

'In the absence of a statute or other positive regulation to the contrary, a contract of insurance may be made by parole. The fact that contracts of insurance are not usually made in this way is not evidence that they cannot be so made. There is nothing in the nature of insurance which requires written evidence of the contract. The contract may be verbal or in writing, or partly in writing and partly verbal. It is, of course, essential to the existence of an oral, as well as a written, contract of insurance that the minds of the parties shall have met on all the essential terms of the contract ... but, where the minds of the parties for a valuable consideration have met on all the terms of the contract, it is complete and enforceable, although it was intended by the parties to be evidenced by a policy which, because of some fortuity, was not delivered before the happening of the event insured against.'

The five elements necessary for an oral contract of insurance are: 'First, the

subject-matter; second, the risk insured against; third, the amount; fourth, the duration of the risk; and fifth, the premium. It is not essential that all of these elements of the contract be expressly agreed upon if the intention of the parties to the contract in these particulars can be gathered from the circumstances of the case. An oral contract of insurance is binding, although the premium is not to be paid at the time of its consummation if credit is given.'

*Id.* at 81 (internal citations omitted).

Here, Respondent introduced evidence to prove all five necessary elements of an oral contract of insurance. First, the subject-matter to be covered by the insurance policy was well-identified. Mrs. Lagermann testified that in addition to the mobile home on Respondents' property there was an outbuilding or a garage-type building with the dimensions of "thirty by fifty." Further, the Application made specific reference under "OTHER STRUCTURES" to the garage and set out a separate premium for that structure. Likewise, the Illustration given to Respondents by Mr. Parker set out that in addition to the coverage for the mobile home in the amount of $20,000.00 there was a provision for "OTHER STRUCTURES" with a separate coverage amount of "$30,000.00."

Second, the risk insured against was "everything from wind and rain to civil unrest," according to Mrs. Lagermann, whose testimony the trial court found more credible than that of Mr. Parker. Mrs. Lagermann testified at trial that she was "never given the type 1, type 2, type 3 ..." levels of coverage discussed at trial and she related Mr. Parker had characterized the coverage under her policy as "the best coverage."[3] Furthermore, there is no question that Mr. Parker, as an agent of Appellant, had authority to bind Appellant to the insurance contract at issue. Mr. Parker admitted he had such authority and acknowledged that as a "captive agent"[4] he had the authority to bind coverage upon receipt of the premium check, which he did.

Third, the Illustration given to Respondents at the time of the binding of the contract on or about September 8, 2008, set out that the total annual premium was to be $657.08; the quarterly premium was to be $172.89; and the semi-annual premium was $328.54.

Fourth, it is clear the duration of the policy was to be one year with the coverage commencing on September 8, 2008. Here, Mr. Parker specifically acknowledged at trial that the date for the commencement of the policy was September 8, 2008. He related that he went to the property on that date, obtained "the GPS reading and came back to the office, entered that information, bound the application, [and] submitted it electronically to the home office." Additionally, both the Application and the Information Page expressly state that coverage was set to begin on September 8, 2008, and end on September 9, 2009.

Fifth, while Mr. Parker was not certain of the amount of the quarterly payment he received from Respondents, he, nevertheless, admitted he received a check from Mr. Lagermann for the premium due, and

---

3. We note that while damage from the weight of ice and snow was not covered under level one protection, the protection Respondents ultimately received, it was, in fact, covered under Appellant's typical level two and level three coverage plans.

4. "A 'captive' agent is restricted to selling policies for only one insurer." *Parshall v. Buetzer,* 195 S.W.3d 515, 519 (Mo.App.2006).

bound the contract once he made the GPS reading mentioned above. It is clear Respondents met their burden of proving an oral contract existed between themselves and Appellant. The trial court did not err in entering judgment in their favor. Point II is denied.

All outstanding points relied on espoused by Appellant have been rendered either irrelevant or moot by our analysis of Point II. *Cameron,* 88 S.W.3d at 900. Further, all pending motions are denied.

The judgment of the trial court is affirmed.

BATES and SCOTT, JJ., concur.